SIDNEY S. MUNTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CARL MUNTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1162, 1163. Promulgated May 22, 1945.

*Samuel Kaufman, Esq.*, for the petitioners.
*Homer F. Benson, Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: These consolidated proceedings involve deficiencies in income tax for the calendar year 1940 in the sum of $9,596.33 in the case of petitioner Sidney S. Munter and $8,175.50 in the case of

petitioner Carl Munter. The question in each proceeding is whether distributions in the taxable year by Crandall-McKenzie & Henderson, Inc., to the petitioners as stockholders were from earnings accumulated subsequent to March 1, 1913, and taxable as ordinary dividends, or were returns of capital. The Federal income tax returns of the petitioners for the taxable year were filed with the collector for the twenty-third district of Pennsylvania at Pittsburgh, Pennsylvania. The proceedings were submitted upon a formal stipulation of facts, which we include herein by reference as our findings of fact.

Briefly stated, the facts are that on March 21, 1940, each of the petitioners, at the price of $8 per share, purchased 10,000 shares of the common stock of Crandall-McKenzie & Henderson, Inc. (hereinafter referred to as Crandall-McKenzie), a Pennsylvania corporation, out of a total of 38,922 shares of its capital stock issued and outstanding (exclusive of 11,078 shares of treasury stock). On June 19, 1940, Crandall-McKenzie distributed to its common shareholders cash in the amount of $35,166.25 at the rate of $1.25 per share, of which each petitioner received $12,500 with respect to the 10,000 shares held by him. Crandall-McKenzie, at December 31, 1939, had no earnings or profits accumulated from December 4, 1928, to December 31, 1939, and it had no earnings or profits in the calendar year 1940.

Pursuant to an agreement among K. W. Todd & Co., investment bankers, O. McKenzie, and L. Henderson, shareholders of two predecessor corporations, Crandall-McKenzie Co. and L. Henderson & Sons. Inc., Crandall-McKenzie had been formed in December 1928 and had acquired all the assets of the two named predecessor corporations in exchange for 24,131 shares of its capital stock and $355,247.75 in cash. This stock and cash were received by stockholders of the two predecessor companies for their stock therein. The remaining 25,-869 shares in the new company were issued to new interests for cash in the amount of approximately $486,893.92.

All of the assets of one of the predecessor corporations, L. Henderson & Sons, Inc., were acquired by Crandall-McKenzie solely in exchange for 9,524 shares of its stock. At the time of this acquisition L. Henderson & Sons, Inc., had earnings and profits of $74,743.62 accumulated subsequent to March 1, 1913.

The assets of the other predecessor corporation, Crandall-McKenzie Co., were acquired by the new company, Crandall-McKenzie, for 14,607 shares of its stock and $355,247.75 in cash. At the time of this transaction, Crandall-McKenzie Co. had earnings and profits accumulated subsequent to March 1, 1913, in the amount of $329,267.95.

O. McKenzie owned 842½ of the outstanding 2,060 shares of stock in Crandall-McKenzie Co. and A. E. Crandall owned the same number of shares. The agreement provided that O. McKenzie and L.

Henderson would "cause A. E. Crandall to sell to Crandall-McKenzie * * * [his] 842½ shares * * * for * * * $300,000." Crandall refused, however, to go along with the plan or sell to Crandall-McKenzie, but he did sell his stock to O. McKenzie for $300,000. Crandall-McKenzie then purchased, as a block of 1,685 shares, this stock, together with the 842½ shares which O. McKenzie owned originally, from O. McKenzie for $300,000 and 12,181 shares of Crandall-McKenzie stock.

From December 4, 1928, the date of its organization, to December 31, 1939, Crandall-McKenzie had aggregate earnings and profits of $401,470.07. During the same period it made aggregate cash distributions of $369,452.30 to shareholders and liquidated or purchased 11,078 shares of its own $1 par value stock for $72.211.13 in cash. In 1940 it had a net loss of $37,252.47 and liquidated or purchased 12,805 shares of its own $1 par value stock for $94,441.90 in cash.[1]

Respondent has treated the distributions to the two petitioners in 1940 as if made from earnings and profits accumulated subsequent to March 1, 1913, and consequently, taxable as a dividend. The petitioners contend that Crandall-McKenzie, the distributing corporation, at the time of the distributions had no accumulated earnings and profits and that accordingly the distribution was made from capital and not subject to tax. The issue is resolved upon the determination of one question, to wit: Whether the distributing corporation, upon its organization in 1928, in the transaction in which it acquired the assets of the two predecessor corporations for stock and cash, took the accumulated earnings and profits of those corporations as its earnings and profits.

In the transaction of December 1928 Crandall-McKenzie, the new company, acquired all the assets of the two predecessor corporations. Stockholders of those two corporations continued as stockholders of the new company and held upwards of 45 percent of its stock. Under such circumstances we think it is clear that transaction constituted a reorganization under section 112 (i) (1) (A) of the controlling Revenue Act of 1928. *Helvering* v. *Minnesota Tea Co.*, 296 U. S. 378; *Nelson Co.* v. *Helvering*, 296 U. S. 374; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462. In pursuance of the plan, which included that reorganization, the participating stockholders of the old corporations exchanged their stock in the old corporations for stock in the new company and money. These exchanges, therefore, were undoubtedly within the provisions of sections 112 (b) (3) and 112 (c) (1) of the Revenue Act of 1928, as was decided by the United States District Court for the Western District of Pennsylvania in the

[1] Whether the liquidation or purchase of its shares or the net loss did, in fact, reduce earnings and profits available for the payment of the contested dividends we do not consider because, assuming they did not, Crandall-McKenzie did not have enough earnings and profits, earned since its organization, to completely cover the disputed dividends.

cases of *Brown* v. *Heiner* and *Kapp* v. *Heiner*, June 27, 1933. Both parties apparently accept that premise. Respondent argues then that the rule of *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; certiorari denied, 287 U. S. 667, applies and that the earnings and profits of the two predecessor companies retained the status of earnings and profits in the hands of Crandall-McKenzie, the new company.

In the *Sansome* case the assets of the predecessor corporation were acquired solely for all of the stock in the new corporation which was issued to the stockholders of the old corporation in the same proportions in which they held the stock of the original company. It was there held that the earnings and profits of the old corporation retained the character of earnings and profits in the hands of the new corporation.

Petitioners insist that the *Sansome* rule must be limited to its precise facts, that the situation in connection with the acquisition of the assets of the two predecessor corporations here by Crandall-McKenzie is different from that in the *Sansome* case in two respects, and that these differences compel the opposite conclusion to that of the court in the *Sansome* case. Thus petitioners argue (1) that the new capital which came into the new corporation substantially changed the proportionate stockholdings of the old shareholders and thus the identity of the predecessor corporations, and (2) that this new capital was used to acquire a large amount of stock of such corporations at a premium, thus effecting a distribution of the earnings and profits of the predecessor corporations. They rely wholly on *Campbell* v. *United States*, 144 Fed. (2d) 177. In that case a successor corporation acquired the business and assets of two predecessor companies in 1929 in a reorganization under section 112 (i) (1) (A) of the Revenue Act of 1928, pursuant to which the old stockholders received in exchange stock in the new corporation in a reduced proportional interest and cash, the proceeds of the sale of some of its stock to outsiders by the new corporation.[2] At the time of this reorganization the two predecessor companies had undistributed profits accumulated after February 28, 1913. In 1933 and 1934, the new corporation paid dividends to its preferred stockholders which were substantially more than the earnings of the new company from the date of its incorporation to the date of those distributions. Both of the petitioners were stockholders in the new company, the one having acquired his stock in the 1929 reorganization and the other having purchased her stock thereafter. The Circuit Court of Appeals for the Third Circuit, to which this proceeding may be ap-

---

[2] The reorganization in the present case is controlled by the same revenue act, to wit, the Revenue Act of 1928.

pealed, held that the *Sansome* rule was not applicable for two reasons—(1) :

\* \* \* The identity of proprietary interest which existed in the *Sansome* case and motivated the court to disregard the corporate entities and treat the earnings of the predecessor corporation as though they were earnings of the successor corporation is, therefore, completely lacking. We think that for this reason alone the doctrine of the *Sansome* case, which by judicial construction operates to transfer earnings from the corporation which earned them to its successor in reorganization, is inapplicable.

and (2) :

The doctrine of the *Sansome* case that the accumulated earnings of the predecessor corporation in a tax-free reorganization shall be deemed carried over to the successor corporation for the purpose of distribution to its stockholders as dividends cannot apply to a situation where the accumulated earnings of the predecessor corporation have been distributed to its stockholders at the time of the reorganization. Obviously earnings cannot at one and the same time be distributed to the stockholders of the predecessor corporation and transferred to the successor corporation. We think that in the present cases it must be held that the accumulated earnings of the old Company and of Mulford were distributed to the stockholders of the old companies. Such a conclusion is called for by a provision of the Revenue Act of 1928 which was in force when the reorganization took place.

Section 112 (c) of that Act provided:

"(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

"(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of the gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property."

As we have already pointed out the reorganization involved the receipt by the stockholders of the Old Company and Mulford of money which under the facts was taxable to them under Section 112 (c). In each case the distribution exceeded the total accumulated earnings of the old companies. If this distribution had "the effect of the distribution of a taxable dividend" within the meaning of paragraph (2) of Section 112 (c) it must be treated as in law a distribution to the stockholders of the entire amount of those earnings.

\*       \*       \*       \*       \*       \*       \*

As we have seen, the accumulated earnings of the Old Company amounted to $2,801,117.15. Since cash in the amount of $9,790,062.50 was distributed to the then common stockholders of the Old Company the distribution was a taxable dividend to the full extent of the accumulated earnings. The same is true of the distribution to the stockholders of Mulford. That company had accumulated earnings of $1,748,397.52 and the distribution amounted to $3,709,003.50 in cash.

Despite the respect in which we hold the Third Circuit Court of Appeals, we think the first reason upon which the *Campbell* case rests is unsound. See *Helen V. Crocker*, 29 B. T. A. 773. The identity of the interests of the shareholders of the predecessor corporation in the succeeding company was not, in our opinion, the basis for the decision in the *Sansome* case. The shareholders of the old corporation received nothing there but stock in the new company. Thus no taxable gain or recognized loss in the reorganization occurred under section 202 (c) (2) of the Revenue Act of 1921, there applicable. That, it seems to us, was the basis for the *Sansome* rule.

In attacking the validity of this reason supporting the opinion of the majority, in his dissent in the *Campbell* case Judge Jones said:

In so deciding [the *Sansome* case], Judge Learned Hand, who spoke for the Court, said (p. 933) that "what was not 'recognized' as a sale or disposition for the purpose of fixing gain or loss [i. e., the reorganization exchange], should [not] be 'recognized' as changing accumulated profits into capital * * *." As it was the intent of Congress, as evidence by the Revenue Acts, to tax as dividends corporate distributions of earnings accumulated since February 28, 1913, manifestly, to accord such distributions freedom from taxation, when ultimately received by stockholders, merely because of coincidental bookkeeping attendant upon a successor corporation's acquisition of a predecessor's business and assets as the result of a reorganization, would be violative of the congressional intent. It necessarily followed, therefore, as a corollary, that the non-recognition of gain or loss allowed by the reorganization provision there involved (Sec. 202 (c) (2) of the Revenue Act of 1921) should, in the words of Judge Hand, "be read as a gloss upon section 201" (the taxable dividend definition of the Revenue Act of 1921). Accordingly, it was held in the *Sansome* case (p. 933), *as a matter of statutory construction*, "that a corporate reorganization which results in no 'gain or loss' under section 202 (c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earning or profits' of the successor, or parent, in liquidation." The same can be no less true as to a distribution in ordinary course. Sec. 112 (b) and (c) (1) of the Revenue Act of 1928 and Sec. 115 of the Revenue Acts of 1932 and 1934 here involved are substantially the same as the cognate provisions of the Revenue Act of 1921 dealt with in the *Sansome* case.

We agree with that expression. Cf. *Commissioner* v. *Wheeler*, 324 U. S. 542.[3]

As to the second ground for the decision in the *Campbell* case, assuming it be sound, no basis of fact supporting it exists here. It is

---

[3] The Supreme Court there held that, under section 112 (b) (7) of the Revenue Act of 1938, where a corporation disposed of property acquired by it in *a nontaxable exchange* for its stock, the basis for determining "earnings and profits" available for distribution is the cost of the property to the transferors. *Inter alia*, the Court there said:

"* * * Congress has determined that in certain types of transaction the economic changes are not definitive enough to be given tax consequences, and has clearly provided that gains and losses on such transactions shall not be recognized for income tax liability but shall be taken account of later. §§ 112, 113. It is sensible to carry through the theory in determining the tax effect of such transactions on earnings and profits. Compare *Commissioner* v. *Sansome*, 60 F. 2d 931, and see Sen. Rep. No. 2156, 74th Cong., 2d Sess., p. 19 ; H. R. Rep. No. 2894, 76th Cong., 3d Sess., p. 41."

obvious, as the Circuit Court recognized in that case, that there could be no distribution having "the effect of the distribution of a taxable dividend" within the meaning of section 112 (c) (2) unless gain to the stockholder receiving that distribution in the exchange was recognizable under section 112 (c) (1).[4] *Love* v. *Commissioner*, 113 Fed. (2d) 236; *Estate of Edward T. Bedford*, 1 T. C. 478; reversed on another point, 144 Fed. (2d) 272 (certiorari granted).

The record in the present case is wholly lacking, at least, in proof of the cost or basis for any of the stock in the predecessor companies in the hands of the exchanging stockholders of those companies. And without that fact there could be no determination of such gain under section 112 (c) (1). This is so unless the acquisition of the Crandall stock is treated as having been purchased by McKenzie for $300,000 and turned over for the same amount to the new corporation in a transaction separate from that involving his original stock—in which event there would have been no gain.

Accordingly, we follow the rule announced in the *Sansome* case[5] and find that the earnings and profits of the predecessor corporations were taken over in toto by Crandall-McKenzie, the successor company. From this conclusion it follows that Crandall-McKenzie had sufficient earnings and profits to cover the distribution in question, which was therefore, as the respondent determined, an ordinary dividend as to petitioners and taxable as such.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

DISNEY, *J.*, dissenting: The only question here is whether the corporate distributions to petitioners were from capital or from earnings and profits. The majority opinion relies upon the *Sansome* case to establish earnings and profits in the distributing corporation. That case was one wherein the Court pointed out that there was mere change of stock for assets, without change in proportion of stock holdings, and no other change in the financial structure. The conclusion there reached, that earnings and profits of the old corporation belonged to the new, is by the majority opinion here applied to a situation where more than 50 percent of the capital in the new corporation comes from sources foreign to the old and where, in addition to the exchange of

---

[4] In *Knapp-Monarch Co.*, 1 T. C. 59, the fact of gain was apparently assumed, or at least the question was not raised.

[5] The rule in the *Sansome* case has, except for the *Campbell* case, *supra,* been followed or approved without qualification in every jurisdiction, so far as we know, in which the question has been raised. *Georday Enterprises, Ltd.* v. *Commissioner,* 126 Fed. (2d) 384; *Corrigan* v. *Commissioner,* 103 Fed. (2d) 1010; certiorari denied, 308 U. S. 576; *Baker* v. *Commissioner,* 80 Fed. (2d) 813; *Harter* v. *Helvering,* 79 Fed. (2d) 12; *Murchison Estate* v. *Commissioner,* 76 Fed. (2d) 641; *United States* v. *Kauffmann,* 62 Fed. (2d) 1045; *Barnes* v. *United States,* 22 Fed. Supp. 282; *Helen V. Crocker, supra.* See *Commissioner* v. *Wheeler, supra.*

stock for assets, cash is paid as to the predecessor corporation, Crandall-McKenzie, in an amount greater than its accumulated earnings and profits, and somewhat less than the accumulated earnings and profits of both corporations. Such a change in the corporate financial structure seems altogether sufficient to require distinction of the *Sansome* case. Although that case is based upon denial of the idea that "what was not 'recognized' as a sale or disposition for the purpose of fixing gain or loss should be 'recognized' as changing accumulated profits into capital," it does not seem, under the facts in the instant case that there is any such change; rather, there appears in the majority opinion a conversion of purchased property into earnings and profits. Where, as here, the greater portion of the new company's capital was raised by sale of stock having no connection with the old corporations, there clearly appears difficulty in identifying a later distribution by such new corporation as not out of such new capital, but from the earnings and profits of the old corporation, most particularly where realism seems to require a balancing of cash paid against earnings and profits allegedly acquired. The old stockholders receiving, in addition to stock in the new corporation, large amounts of cash, they seem in fact to have realized upon the earnings and profits of the former corporation to that extent. For the purpose of the present question, the result would not be different if the former corporation kept its earnings and profits, and the new corporation kept its capital in the same amount, in which case later distribution would be *pro tanto* from such capital.

In my opinion, the record here shows the substance of a distribution of the earnings and profits of the former corporation to its stockholders to the extent that cash paid equaled such earnings and profits, and I do not think that the general idea of nonrecognition of gain or loss in connection with a reorganization should be carried so far as to brand the distributions here as from earnings and profits. Examination of all the cases cited in *Campbell* v. *United States*, 144 Fed. (2d) 177, indicates that none involves a situation where new capital is raised by the issuance of new stock and resultant change in proportion of holdings and financial structure. I make no exception of *Helen V. Crocker*, 29 B. T. A. 773, for therein, although the new corporation had authorized capital stock of 10,000,000 shares of $1 par each, the opening entries on its books showed capital stock of $3,169,-266, which is the aggregate par value of the shares issued to the two predecessor corporations. It appears that 900 shares were also issued to the incorporators for cash, but whether these were included in the 3,169,266 shares appears uncertain and, in any event, the number is so small by comparison with the total number issued that I can not consider the case of weight on the present question. The conclusion in *Campbell* v. *United States*, *supra*, is based in part upon the idea that

the cash received by the old stockholders had the effect of distribution of a taxable dividend, and so a distribution of the earnings.   With that idea we agreed in *Knapp Monarch Co.*, 1 T. C. 59, a recapitalization case; also in *Estate of Edward T. Bedford*, 1 T. C. 478 (also recapitalization).   The latter was reversed in *Estate of Bedford* v. *Commissioner*, 144 Fed. (2d) 272 (certiorari granted, Jan. 8, 1945), because the Circuit Court considered the distribution, because of earlier stock dividends, to be in partial liquidation.   In both cases we emphasized that there were earnings and profits sufficient to cover the distribution. Obviously, then, we considered that the distribution would be from, and reduce, such earnings and profits.   Thus it appears that the cash received in addition to stock in reorganization does not escape tax, and that therefore the basic thought in the *Sansome* case, escape from tax because of reorganization-nonrecognition of gain, has no application, so far as concerns any cash also received in addition to stock, by the stockholder—an element altogether foreign to the situation in the *Sansome* case.

I see no reason to apply that case and would hold that the distribution in 1940 here in question was from capital.   I therefore dissent.