Isabella M. Sheldon, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Julia S. Ludwig, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Ralph C. Sheldon, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 6203, 6204, 6205.   Promulgated March 19, 1946.

*Benjamin Grund, C. P. A.,* and *S. J. Lasser, C. P. A.,* for the petitioners.

*Bernard J. Long, Esq.,* for the respondent.

512

514

**OPINION.**

OPPER, *Judge*: The parties appear to be in agreement that the exchange of stock of the old company for stock and debentures of the new was a tax-free reorganization under section 112. The controversy concerns a distribution of cash and other property received by petitioners as stockholders of the old company immediately prior to the merger.

The purpose of this distribution, its place in the sequence of events, and the surrounding circumstances, lead to but one conclusion. They all demonstrate that it was an integral part of the reorganization transaction as a whole and must be treated in connection with it. *Helvering* v. *Alabama Asphaltic Limestone Co.*, 315 U. S. 179, 185.

We accordingly concur in petitioners' assertion that this is a proper case for application of the principle that reorganization transactions are not to be broken down into their separate phases, but should be viewed as a whole.[1] We also agree that the substance of the transaction rather than its form, the ultimate result reached rather than the mechanics used, are significant. Nevertheless, both parties resort to section 115 for their respective positions and rely upon one or another of its subsections to support their divergent views. We think that both err in this respect, and that the inescapable characterization of this transaction as one covered by the reorganization provisions requires that it be dealt with under section 112 and limits any applicability of section 115 accordingly. *Commissioner* v. *Estate of Bedford*, 325 U. S. 283. It follows that neither respondent's attempt to characterize the entire distribution as a taxable dividend, under subsection (a) of section 115, nor petitioners' to limit the transaction to a distribution in partial liquidation under subsection (c) of the same section can succeed. Cf. *Sidney S. Munter*, 5 T. C. 108; *Spirella Co.*, 5 T. C. 876.

Since there is no issue as to the exchange of securities and the controversy limits itself to the cash and other property not permitted to be received without the recognition of gain, it is subsection (c) of section 112[2] which is applicable. Both the language of subdivision (2) of that subsection and its legislative history[3] require that it be

---

[1] Although respondent in terms denies this, it seems to us that he virtually concedes it when he says in his brief: "The true explanation of the distribution is that *as part of the plan of merger,* an effort was made to equalize the assets of the Post Publishing Company with those of the Journal Printing Company, and in order to do so, assets of a net value of $101,713.02 constituted excess assets of the Post Publishing Company, and as such were distributed to its stockholders as unnecessary to the merger." (Emphasis added.)

[2] (c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

(2) If a distribution made in pursuance of a plan of reorganization is within the provisions of paragraph (1) of this subsection but has the effect of the distribution of a taxable dividend, then there shall be taxed as a dividend to each distributee such an amount of gain recognized under paragraph (1) as is not in excess of his ratable share of the undistributed earnings and profits of the corporation accumulated after February 28, 1913. The remainder, if any, of the gain recognized under paragraph (1) shall be taxed as a gain from the exchange of property.

[3] Report of Ways and Means Committee (68th Cong., 1st sess., H. Rept. 179, pp. 14–15) :

"(2) There is no provision of the existing law which corresponds to paragraph (2) of subdivision (d). This subdivision provides that any amount distributed by a corporation

applied to the present facts. *Commissioner* v. *Estate of Bedford, supra.*

Petitioners insist that the transaction amounted to no more in substance than a purchase by their corporation of the stock of other stockholders. They rely for this conclusion upon *Fox* v. *Harrison* (C. C. A., 7th Cir.), 145 Fed. (2d) 521. There are at least two reasons why this approach seems inadmissible. Unlike the facts in the *Fox* case, these petitioners retained the shares which were purchased and did not turn them in to the corporation. It is scarcely logical to view their purchase as a step toward eventual acquisition by the corporation when the ultimate outcome was their retention of the property purchased or its proceeds. Moreover, the distribution of cash and other property was not solely to the stockholders who had purchased the stock, but was a ratable division among them all according to the proportions of stock ownership; and the amount which petitioners did receive was considerably less than the purchase price paid out by them. The factual consequence was precisely that of the distribution of a taxable dividend and not even approximately what would have resulted had these petitioners in fact been acting for the corporation as they now claim to have been.

We think it clear that on the facts the distribution was for the purpose of equalizing the assets of the two merging corporations, not to reimburse petitioners for the purchase of the stock; that they purchased and retained the stock for themselves and not for the corporation nor for the other stockholders; and that the final result was, on the one hand, the acquisition and retention by them of a larger proportional interest in the old corporation, and, on the other, the receipt by them and the other stockholders of a distribution of the corporation's profits which was in all respects the equivalent of a taxable dividend. See *William E. Fulton,* 15 B. T. A. 1018; affd. (App. D. C.), 47 Fed. (2d) 436.

There seems no doubt that there were post-1913 earnings and profits which would have been available to cover the entire amount of the distribution—a premise in which the parties apparently concur. The

in connection with a reorganization which has the effect of a taxable dividend shall be taxed as a dividend and not as a taxable gain.

"The necessity for this provision may best be shown by an example: Corporation A has capital stock of $100,000, and earnings and profits accumulated since March 1, 1913, of $50,000. If it distributes the $50,000 as a dividend to its stockholders, the amount distributed will be taxed at the full surtax rates.

"On the other hand, corporation A may organize corporation B, to which it transfers all its assets, the consideration for the transfer being the issuance by B of all its stock and $50,000 in cash to the stockholders of corporation A in exchange for their stock in corporation A. Under the existing law, the $50,000 distributed with the stock of corporation B would be taxed, not as a dividend, but as a capital gain, subject only to the 12½ per cent rate. The effect of such a distribution is obviously the same as if the corporation had declared out as a dividend its $50,000 earnings and profits. If dividends are to be subject to the full surtax rates, then such an amount so distributed should also be subject to the surtax rates and not to the 12½ per cent rate on capital gain. Here again this provision prevents evasions."

taxable portion, however, is limited by the gain received by the respective petitioners from the transaction. The figures appear in our findings from which these amounts can be computed.

Petitioners' contribution to the Jamestown Fire Department Association should be allowed as a charitable contribution under section 23 (o) (2). See S. [M.] 1202, 1 C. B. 148; *Roy C. McKenna*, 5 T. C. 712.

*Decision will be entered under Rule 50.*