## COMMISSIONER OF INTERNAL REVENUE v. SANSOME.

### No. 354.

Circuit Court of Appeals, Second Circuit.
July 26, 1932.

932

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Willis R. Lansford, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellant.

R. M. O'Hara, of Washington, D. C., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

Sansome, the taxpayer, on January 1, 1921, bought some shares of stock, having $100 par value, in a New Jersey company, which on April 1, 1921, sold out all its assets to another company of the same state. The new company assumed all existing liabilities, and issued its shares to the shareholders of the old, without change in the proportion of their holdings, though the number of new shares was increased five times, and they were without par value. The new charter differed only in that the company could manufacture other products besides silk, to which the charter of the old company had been confined. There was no other change in the "financial structure," as the phrase is.

The old company had carried upon its books a large surplus and undivided profits, which we may assume to have been altogether earned before January 1, 1921, and which the new company carried over at the same figure upon its books for the year, 1921, but somewhat reduced because of losses in 1922. The business made no profit, and the company was dissolved in 1923. During this year Sansome received payments upon his shares in liquidation which the Commissioner included in his returns as dividends for the year 1923, for the distribution of that year did not exhaust the surplus and undivided profits which still remained. Sansome protested; he wished to use these dividends to compute the "gain" upon his investment; that is, to take all liquidating dividends first to amortize his cost, or "base," and return any overplus as profit in the year, 1924, when the last payment was made. The question is whether section 201 of the Revenue Act of 1921 (42 Stat. 228) justified the Commis-

sioner's position. The Board held that as the companies were separate juristic persons, the later one had distributed nothing "out of *its* earnings or profits."

Section 201 of 1921 differed from the same section in the Act of 1918 (40 Stat. 1059), which expressly provided that all liquidation dividends should be taken as in exchange for shares, and that the gain should be computed by the formula which Sansome wished to use; and the Act of 1924, § 201 (c), 26 USCA § 932 (c), restored the law to its original form. The change of 1921 must have been deliberate and we cannot disregard it; it is also unequivocal, only distributions not allocated to profits by subdivision b may be used to reduce the subtrahend for computing the gain derived, or the loss sustained. This means that the shareholder is to be taxed upon the dividends as such so far as they represent profits, calculated under the preceding subdivision and that what is left shall be treated as amortizing his cost. The rule would work in some cases to the taxpayer's advantage and in others not; he escapes normal taxes pro tanto, provided he has enough income in later years to use as a deduction the loss calculated upon the reduced payments. McCaughn v. McCahan, 39 F.(2d) 3 (C. C. A. 3); Phelps v. Com'r, 54 F.(2d) 289 (C. C. A. 7); Darrow v. Commissioner, 8 B. T. A. 276; Hamilton Woolen Co. v. Commissioner, 21 B. T. A. 334.

Nor is there doubt as to the constitutionality of the section. When Sansome bought the old shares, the profits had indeed been already earned; yet he might be taxed upon ordinary dividends paid out of them. U. S. v. Phellis, 257 U. S. 156, 171, 172, 42 S. Ct. 63, 66 L. Ed. 180; Taft v. Bowers, 278 U. S. 470, 484, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362. He could not successfully assert that such dividends must be computed as part of his gain on the transaction, but must be content with a corresponding allowance when he sold. If so, Congress might insist that a dividend in liquidation should be treated like any other, for while this may violate ordinary usage, once we conceive of income as the change from undivided profits to an immediately available dividend, the rest follows. The taxpayer gets his quid pro quo in the closing transaction. Though it is a chance whether the final resultant will be favorable or not, the dice are not loaded against him. Thus, there was income to tax as much as though the company continued its life; and it was not an unfair method.

All this the Board accepted, but held with

Sansome, because it treated the company as new and independent, and the liquidating dividends as distributed out of capital, not "out of its earnings or profits," of which there were none. Under the Act of 1916, which had not yet developed the elaborate definition of the later statutes, greater corporate differences have been considered not to break the identity of the older company. Weiss v. Stearn, 265 U. S. 242, 44 S. Ct. 490, 68 L. Ed. 1001, 33 A. L. R. 520. In Marr v. U. S., 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079, still greater differences did indeed change the result, but for our purposes the decision is irrelevant, for the facts were wide of those at bar. Western, etc., Co. v. Commissioner, 33 F.(2d) 695 (C. C. A. 4), was a stronger case for the petitioner here, and Phillips v. Lyman H. Howe Films Co., 33 F.(2d) 891 (C. C. A. 3), was substantially on all fours, for we attach no importance to the language of the Pennsylvania statute. In Pioneer, etc., Co. v. Commissioner, 55 F.(2d) 861 (C. C. A. 6), the new company had been organized in a different state, a conceivable distinction (vide Marr v. U. S.), but not enough. Even that is absent here.

However, we prefer to dispose of the case as a matter of statutory construction, quite independently of decisions made in analogous, though not parallel, situations. It seems to us that section 202 (e) (2) (42 Stat. 230) should be read as a gloss upon section 201. That section provides for cases of corporate "reorganization" which shall not result in any "gain or loss" to the shareholder participating in them, and it defines them with some particularity. He must wait until he has disposed of the new shares, and use his original cost as the "base" to subtract from what he gets upon the sale. Such a change in the form of the shares is "an exchange of property," not "a sale or other disposition" of them. Section 201 was passed, in some measure at least, to fix what should come into the computation of "gain or loss"; it allowed all payments except those cut out by subdivision c. It appears to us extremely unlikely that what was not "recognized" as a sale or disposition for the purpose of fixing gain or loss, should be "recognized" as changing accumulated profits into capital in a section which so far overlapped the later. That in substance declared that some corporate transactions should not break the continuity of the corporate life, a troublesome question that the courts had beclouded by recourse to such vague alternatives as "form" and "substance," anodynes for the pains of reasoning. The effort was at least to narrow the limits of judicial inspiration, and we cannot think that the same issue was left at large in the earlier section. Hence we hold that a corporate reorganization which results in no "gain or loss" under section 202 (c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were "earnings or profits" of the original, or subsidiary, company remain, for purposes of distribution, "earnings or profits" of the successor, or parent, in liquidation. As the transaction—"reorganization"—between the companies at bar fell plainly within section 202 (c) (2), it seems to us that the Board was wrong.

Order reversed; cause remanded for further proceedings in accord with the foregoing.