GEORDAY ENTERPRISES, Limited, v. COMMISSIONER OF INTERNAL REVENUE.

HELVERING, Commissioner of Internal Revenue, v. GEORDAY ENTERPRISES, Limited.

Nos. 4818, 4819.

Circuit Court of Appeals, Fourth Circuit.

March 9, 1942.

Richard H. Wilmer, of Washington, D. C. (Joseph C. White and Thomas F. Boyle, both of New York City, on the brief), for Georday Enterprises.

Hubert L. Will, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition for the review of a decision of the United States Board of Tax Appeals determining a deficiency in the income tax liability of Georday Enterprises, Limited (hereinafter called Georday), for the calendar year 1932 in the sum of $50,875, and a 25% penalty in the sum of $12,718.75 for the same year. The memorandum opinion of the Board, entered on December 3, 1940, is unreported.

The factual pattern of this case is complicated but admits of no dispute. Georday is a Canadian corporation, organized on October 21, 1931, with its principal office located at Charlottetown, Prince Edward Island, Canada. Its corporate purposes were to hold, buy and sell investment securities. Power Securities Corporation (hereinafter referred to as Power) was a corporation organized on August 30, 1922, under the laws of Delaware. On that date, Lady Cunard, a nonresident alien, paid $3,000 for 300 shares of the voting common stock of Power. These were the only shares ever issued by Power. No distributions were ever made on this stock other than the distribution of the stock of Blenheim Company, Ltd. (hereinafter referred to as Blenheim), which will be subsequently described.

On or about August 31, 1922, Lady Cunard transferred to Power certain securities, and in payment therefor Power agreed to pay her, over a period of time, the sum of $361,000. By June 12, 1928, Power had repaid to Lady Cunard the $361,000, together with $22,872.46 which it had borrowed from her in October, 1925.

From August 31, 1922, to January 22, 1932, Power was engaged in the business of holding, buying, selling and otherwise dealing in investment securities and collecting the income therefrom. During this period, Lord & Widli, of New York City acted as brokers for Power, and Power had accumulated earnings and profits of $728,586.20. In the period from July 2, 1928, to and including October 2, 1931, Lady Cunard had, from time to time, borrowed money from Power, and on October 26, 1931, she was indebted to Power in the principal sum of $338,575.21, together with accrued interest of $25,991.05.

On October 26, 1931, five days after Georday's incorporation, Lady Cunard, through August E. Widli, subscribed for the entire capital stock of Georday consist-

ing of 300 shares with a par value of $10 per share. Widli paid the requisite $3,000 and charged this amount to Lady Cunard's account with Lord & Widli. On the same day, October 26, 1931, Georday acquired the entire capital stock of Power from Lady Cunard for $365,000 in cash, which Georday had borrowed from Lord & Widli, and $350,000 in 10 year bonds of Georday. Lady Cunard, in turn, paid the cash thus received to Power in payment of the loans previously made to her.

On November 27, 1931, Lady Cunard caused Blenheim Company, Ltd., to be incorporated under the laws of the Colony of Newfoundland, with an authorized capital stock of 500 shares of a par value of $10 each. Blenheim was organized for the purpose of holding, buying, selling and otherwise dealing in investment securities and collecting income therefrom. At the time of its formation, it was intended that Blenheim (a foreign corporation) should take over the assets and assume the liabilities of Power (a domestic corporation). Prior to January 22, 1932, Blenheim had no gross income from any source whatsoever and its only outstanding stock consisted of three shares issued to qualify directors.

On January 22, 1932, Power and Blenheim entered into a "Plan and Agreement of Reorganization". Pursuant to this arrangement, Power agreed to transfer to Blenheim all of its assets and Blenheim agreed to issue to Power, or its nominee, in exchange for the assets of Power, the entire authorized and then unissued shares of capital stock of Blenheim, consisting of 497 shares of the par value of $10 each. Power agreed to distribute the stock of Blenheim, when received, to its sole stockholder (Georday) without the surrender by the latter of the stock of Power.

This agreement was duly performed on January 22, 1932, in accordance with its terms. Blenheim acquired all the property and assets, and assumed all the liabilities of Power, while Power received the 497 shares of Blenheim stock and distributed them to Georday. Power was thereafter dissolved on August 25, 1932. No other shares of stock or securities were at any time issued by Blenheim. The fair market value of the Blenheim shares received by Georday on January 22, 1932, was $699,887.16.

On January 22, 1932, the stockholders of Blenheim passed the following resolution: "Resolved that a distribution of $740 per share on each outstanding share of the Company be made on January 23, 1932, to shareholders of record at the close of business on January 22, 1932, and that the amount of the above distribution be charged to the paid-in surplus account of the Company."

Pursuant to the terms of this resolution, Blenheim, on January 22, 1932, made a distribution of $740 per share, aggregating $370,000, to Georday as its sole stockholder. Since this date, Blenheim has continued in existence with substantial assets and has continued to hold, buy, sell and otherwise deal in investment securities and to collect the income therefrom. The gross income of Blenheim for the calendar year 1932 was reported as $16,737 in a return made to the Collector of Internal Revenue in Baltimore, on May 9, 1933. From January 22, 1932, until December 7, 1935, the business, securities and investments of Blenheim were managed in the same manner as were the business, securities and investments of Power before January 22, 1932.

On June 22, 1935, an Internal Revenue Agent completed an examination and investigation of the books and records of Georday at the office of Lord & Widli in New York City. On July 9, 1935, Georday was duly notified that a tax liability and penalty were proposed to be assessed against it for the calendar year 1932. The reason for asserting the penalty was that Georday had not filed a federal income tax return. Thereafter, and prior to the commencement of this proceeding before the Board of Tax Appeals, a conference was held between representatives of Georday and the Commissioner with reference to the asserted liability. However, Georday was adamant and still failed to filed a return. Accordingly, the Commissioner, on or about April 2, 1938, prepared a federal income tax return for Georday for the calendar year 1932. This was done pursuant to the authority granted in Section 3176 of the Revised Statutes, as amended, 26 U.S.C.A. Int.Rev.Code, § 3612.

The return so filed by the Commissioner had entered under gross income, profit from the sale of real estate, stocks, bonds and other capital assets, the amount of $712,013.16. In Schedule "B" of the return, this amount was computed as being the difference between $715,013.16, the net value of the Power assets as deter-

mined by the Commissioner, and the sum of $3,000 which was the original cost of the Power stock to Lady Cunard, and which the Commissioner determined was the basis of that stock in the hands of Georday. The return indicated no deductions. On April 2, 1938, the Commissioner sent Georday a notice of the deficiency in income taxes for the year 1932, resulting from the Commissioner's determination that Georday had realized a profit of $712,013.16 from the liquidation of Power.

The deficiency determination was based on the holding of the Commissioner that the alleged plan of reorganization of January 22, 1932, did not qualify as a non-taxable reorganization within the meaning of Section 112 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 511, and the holding that the transfer by Lady Cunard of the Power stock to Georday on October 26, 1931, was a non-taxable exchange within the purview of Section 112 (b)(5) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 377. If the several transactions had occurred six months later, that is, subsequent to the passage of the Revenue Act of 1932, they clearly would not have resulted in a non-taxable reorganization. See Section 112(k), Revenue Act of 1932, H. Rep. No. 708, 72nd Cong., 1st Sess. p. 20 (1931-1 Cum.Bull. (Part 2) 457, 471); S.Rep. No. 665, 72nd Cong., 1st Sess., pp. 26-27 (1931-1 Cum. Bull. (Part 2) 496, 515).

On June 29, 1938, Georday filed a petition with the Board of Tax Appeals in which it alleged, inter alia, that the transfer of the Power assets to Blenheim for the Blenheim stock constituted a nontaxable reorganization and that the receipt by Georday of the Blenheim stock pursuant to the plan was also nontaxable. It is not without importance that up to this time Georday had filed no income tax return whatever for 1932.

Finally, on September 13, 1938, Georday filed with the Collector of Internal Revenue at Baltimore, Maryland, a federal income tax return for its calendar year 1932, in which it set forth as gross income the amount of $370,000 as a dividend received. On the face of the return, opposite the entry of this item, appeared the following statement: "The taxpayer contends that the dividends shown above are not income from sources within the United States." However, it should be noted that more than

50% of the gross income of Power for the three year period ending with the close of its taxable year preceding January 22, 1932, was derived from sources within the United States as determined under the provisions of Section 119 of the Revenue Acts of 1928 and 1932, 26 U.S.C.A. Int.Rev.Acts, pages 390 and 526.

In any event, the amount of the distribution was taken as a deduction on that return. At the time this return was filed, Georday had no knowledge that the Commissioner had filed a return for it disallowing any deductions which Georday might otherwise be entitled to claim.

An amended answer filed by the Commissioner on October 2, 1939, alleged that, in addition to the profit included by him in the income of Georday in the notice of deficiency, Georday received during the taxable year 1932 a cash dividend on the stock of Blenheim in the amount of not less than $370,000 which was a part of Georday gross income from sources within the United States. Georday then filed a reply in which it denied the allegation of the amended answer that the $370,000 dividend from Blenheim was a part of Georday's gross income from sources within the United States.

The Board of Tax Appeals, assuming the correctness of Georday's contention that the transfer of Power's assets to Blenheim was a nontaxable reorganization under Section 112 of the Revenue Act of 1932, sustained the Commissioner's contention that the $370,000 cash dividend constituted gross income to Georday from sources within the United States. This was an application of the principle that, after a tax-free reorganization, continuity of old and new corporations will be recognized to the extent of treating the earnings of the old corporation as though they were earnings of the new. The Board, in holding the cash dividends from Blenheim taxable to Georday, stated that the earnings of Power, all of which were from sources within the United States, retained that same character in the hands of Blenheim.

The contention of Georday that it should be allowed a deduction of the amount of the dividend received by it, if the dividend were taxable, was rejected by the Board because Georday had filed no tax return until after one excluding all deductions had been filed for it by the Commissioner, the deficiency letter had been sent to it and the petition to the Board had been filed.

The Board found it unnecessary to pass upon the correctness of the Commissioner's determination that the transfer from Power to Blenheim did not qualify as a nontaxable reorganization within the meaning of Section 112 of the Revenue Act of 1932, since the Board concluded that the basis of the Power stock in the hands of *petitioner was $368,000 rather than $3,000,* as determined by the Commissioner. Hence, no greater deficiency would result from sustaining the Commissioner on the question of reorganization.

Georday has duly appealed to this Court from the decision of the Board and Georday contends that:

(1) The dividend of $370,000 received by Georday from Blenheim did not constitute income from sources within the United States.

(2) Georday did file a federal income tax return and hence cannot be deprived of its right to deduct the amount of the dividend.

(3) *Georday is not liable to the 25%* penalty.

We are of the opinion that none of these contentions contains substantial merit and, therefore, we affirm the decision of the Board in every respect.

■ This is a companion case to Blenheim Company, Limited, v. Commissioner of Internal Revenue, 4 Cir., 125 F.2d 906, decided by us this Term. On the issues of the timeliness of Georday's federal income tax return and the imposition of a 25% penalty, our decision in the Blenheim case is determinative. The case for disallowance of Georday's deductions is even stronger here because Georday failed to file a return voluntarily not only after a return had been filed for it by the Commissioner and after a deficiency letter had been sent to it, but even after a petition to the Board had been filed. In point of time, Georday filed its return more than five years after the date on which it was due.

Georday, therefore, clearly failed to file its return within the reasonable terminal period prescribed in the Blenheim case and is now precluded from obtaining the benefits of any deductions it might have otherwise been entitled to claim had it filed a timely return. Similarly, Georday is subject to the 25% penalty imposed by Section 291 of the Revenue Act of 1932, 26 U.S.C. A. Int.Rev.Acts, page 566, for a late filing inasmuch as Georday has advanced no adequate reason why a timely return was not filed by it.

Having thus disposed of Georday's second and third contentions, we shall now discuss its main point in this appeal, namely, that the dividend of $370,000 received by Georday (a foreign corporation) from Blenheim (a foreign corporation) did not constitute income from sources within the United States. This is the distinctive feature that differentiates the instant case from the Blenheim case.

Section 231(a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 554, provides: "In the case of a foreign corporation gross income includes only the gross income from sources within the United States". Section 119 of the Revenue Act of 1932 defines what constitutes income from sources within the United States:

"Income from Sources Within
United States

"(a) Gross income from Sources in United States. The following items of gross income shall be treated as income from sources within the United States:
* * *

"(2) Dividends. The amount received as dividends—

"(A) from a domestic corporation other than * * *

"(B) from a foreign corporation unless less than 50 per centum of the gross income of such foreign corporation for the three-year period ending with the close of its taxable year preceding the declaration of such dividends (or for such part of such period as the corporation has been in existence) was derived from sources within the United States as determined under the provisions of this section;
*       *       *       *       *

"(c) Gross Income from Sources Without United States. The following items of gross income shall be treated as income from sources without the United States:
* * *

"(2) Dividends other than those derived from sources within the United States as provided in subsection (a) (2) of this section".

■ Georday, a foreign corporation, received on January 22, 1932, the sum of $370,000 from the Blenheim Company, also a foreign corporation, pursuant to a resolution of Blenheim stating that the distribution was chargeable to the paid-in surplus account of Blenheim. It was stipulated in

the record that more than 50% of the gross income of Power (a domestic corporation) for the 3 year period ending with the close of its taxable year preceding the declaration of the dividend was from sources within the United States; and that Power's accumulated earnings were in excess of the amount of the dividend. That being so, the principle applies that after a tax-free reorganization, continuity of old and new corporations will be recognized to the extent of treating the earnings of the old corporation as though they were earnings of the new. Commissioner v. Sansome, 2 Cir., 1932, 60 F.2d 931, certiorari denied, Sansome v. Burnet, 1932, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575. Cf. Palm Springs Hotel Corp. v. Commissioner of Internal Revenue, 62 S.Ct. 544, 86 L.Ed. ——, decided by U. S. Supreme Court February 2, 1942.

We think the formal logic of the situation is flawless. The earnings of Power were from sources within the United States. These earnings, under the Sansome case, when transferred to Blenheim remained income from sources within the United States. Ergo, the distribution of these earnings by Blenheim to Georday constituted earnings from sources within the United States within the purview of Section 119 of the Revenue Act of 1932.

It is true that the instant case differs from the Sansome case in that Blenheim is a foreign corporation. Yet we do not see how we can be asked to subscribe to such an anomaly as to hold that Blenheim had earnings and profits only because they were accumulated by its predecessor (a domestic corporation) obviously as a part of its "gross income" and admittedly in the United States, but that Blenheim's income is still not to be considered as having been derived from sources within the United States.

■ The meat of the Sansome case is found in a statement by Circuit Judge Learned Hand (60 F.2d at page 933): "Hence we hold that a corporate reorganization which results in no 'gain or loss' under section 202(c) (2) (42 Stat. 230) does not toll the company's life as continued venture under section 201, and that what were 'earnings or profits' of the original, or subsidiary, company remain, for purposes of distribution, 'earnings or profits' of the successor, or parent, in liquidation."

This principle has been repeatedly affirmed and approved in many other decisions. United States v. Kauffmann, 9 Cir., 1933, 62 F.2d 1045; Murchison's Estate v. Commissioner, 5 Cir., 1935, 76 F.2d 641; Fain v. Commissioner, 5 Cir., 1935, 76 F.2d 1008, certiorari denied, 1935, 296 U.S. 588, 56 S.Ct. 100, 80 L.Ed. 416; Baker v. Commissioner, 2 Cir., 1936, 80 F.2d 813; Cable v. Commissioner, 2 Cir., 1939, 102 F.2d 977; certiorari denied, 1939, 308 U.S. 575, 60 S.Ct. 91, 84 L.Ed. 482; Corrigan v. Commissioner, 3 Cir., 1939, 103 F.2d 1010, certiorari denied, 1939, 308 U.S. 576, 60 S.Ct. 91, 84 L.Ed. 482; Harter v. Helvering, 2 Cir., 1935, 79 F.2d 12; Barnes v. United States, D.C.E.D.Pa. 1938, 22 F.Supp. 282; Crocker v. Commissioner, 1934, 29 B.T.A. 773; Carey v. Commissioner, 1934, 30 B.T.A. 572; Cf. Western Maryland Ry. Co. v. Commissioner, 4 Cir., 1929, 33 F.2d 695. Furthermore, Congressional approval of the principle seems clear. Several of the cases just cited are set out in reports of Congressional committees. S.Rep.No. 2156, 74th Cong., 2nd Sess. p. 19 (1939-1 Cum. Bull. (Part 2) 678, 690); S.Rep. No. 1567, 75th Cong., 3rd Sess., pp. 18-19 (1938-1 Cum. Bull. (Part 2) 779, 792); H.Rep. No. 2894, 76th Cong., 3rd Sess., pp. 41-42; S.Rep. No. 2114, 76th Cong., 3rd Sess., p. 25.

We are not impressed by Georday's contention that the principle of the Sansome case should be strictly limited and has no application to the instant case. Georday's claim that there was a reorganization effected between Power and Blenheim necessarily involves the idea that foreign corporations fall within the ambit of the reorganization sections of the Revenue Act and that foreign corporations, in the same manner and to the same extent as domestic corporations, may be parties to nontaxable exchanges. It would seem to be both good logic and sound sense, then, that if a domestic corporation and a foreign corporation are treated alike with respect to the recognition of gains, the two types of corporations should also be treated alike with respect to the transfer of earnings. As to both circumstances, gains and earnings, Congress has, we think, regarded the transferee corporation as continuing the venture upon which the transferor corporation had previously embarked. See Murchison's Estate v. Commissioner, 5 Cir., 1935, 76 F.2d 641, 642.

We think the earnings in question were clearly derived from sources within the United States. Power was a domestic corporation, and from sources within the United States came all of its profits. Blenheim, a newly-formed corporation, had no income from sources without the United States, as of January 22, 1932, the date of both the transfer to it from Power and the distribution by Blenheim to Georday. Blenheim's earnings, then, consisting solely of earnings transferred to Blenheim by Power, were from sources within the United States. Accordingly, these same earnings remained earnings from sources within the United States when they were distributed to Georday by Blenheim.

We are not unmindful of American Gas & Electric Co. v. Commissioner, 85 F.2d 527, 2 Cir., 1936, and similar cases cited by Georday. Careful examination of these decisions reveals that they do not involve the question here presented. Moreover, subsequent to these decisions the Second Circuit reaffirmed the Sansome doctrine in Baker v. Commissioner, supra, Cable v. Commissioner, supra, and Harter v. Helvering, supra, and Congress has recognized the correctness of the principle.

In closing we note that although the domestic corporation, Power, a personal creation of Lady Cunard who owned all of its capital stock, was financially successful, it never made a dividend distribution to Lady Cunard during the entire period of its existence. By October, 1931, Power had accumulated surplus profits from sources within the United States amounting to more than $700,000. Difficulties had arisen between the corporation and the federal taxing authorities respecting the alleged improper accumulation by the corporation of its earnings in order to avoid a tax upon its sole stockholder. These difficulties were settled by Power paying to the government in 1931 and 1932 as a compromise, a substantial sum of money. The amount thus paid, however, was less than the amount which would have been recovered from the corporation if the matter had gone to litigation and the government had been successful. Because of these tax difficulties, or for other reasons, it was decided to wind up the affairs of Power. Had Power followed the simple course of declaring a liquidating dividend to its sole stockholder, Lady Cunard, taxable income would have been realized by her in the sum of $697,000.

This would be the difference in the value of the assets of Power, $700,000, and the cost to her of her interest in the corporation, $3,000.

However, the intricate corporate manipulations stated earlier in this opinion, involving the creation of two new foreign corporations, were entered into instead of the obvious expedient of declaring a direct dividend to Lady Cunard. Indeed, all the legal formal solemnities were duly recognized, including special trips made to Canada by Lady Cunard's agents for the sole purpose of signing the necessary papers and physically delivering the securities in Montreal. Of course, the fact that the perfunctory transfers occurred in Canada is entitled to no weight. Ardbern Co., Ltd., v. Commissioner, 4 Cir., 1941, 120 F.2d 424.

 So, without either impugning the motives of Lady Cunard or prescribing tax evasion as the leit motif of this entire series of transactions, we merely repeat a statement recently made by Judge Soper in United States v. Brager Building & Land Corporation, 4 Cir., 1941, 124 F.2d 349, 351: " * * * schemes of taxpayers to escape taxation by the mere use of the corporate form will not be tolerated."

This opinion disposes also of the case of Helvering, Commissioner of Internal Revenue, v. Georday Enterprises, Limited, No. 4819.

Accordingly, we affirm the decision of the Board of Tax Appeals.

Affirmed.