### PUTNAM v. UNITED STATES.
### No. 4023.

Circuit Court of Appeals, First Circuit.
May 25, 1945.

722

Raymond T. King, of Springfield, Mass., for appellant.

Fred J. Neuland, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch and Helen Goodner, Sp. Assts. to Atty. Gen., Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for appellee.

Before MAHONEY and WOODBURY, Circuit Judges, and FORD, District Judge.

MAHONEY, Circuit Judge.

This was an action to recover income taxes. The question presented is whether all the dividends received by the taxpayer in 1935 from Package Machinery Company were paid out of earnings or profits so as to be taxable under § 115(a) and (b) of the Revenue Act of 1934,[1] or whether a part of the amount received is not taxable because it represents a return of capital rather than the distribution of earnings or profits. The solution of this question in turn depends on whether the transaction in which Package Machinery Company acquired all the assets of another company in exchange for its stock was a tax-free reorganization under § 112 of the Revenue Act of 1928.[2]

The facts were stipulated and may be summarized as follows:

---

[1] C. 277, 48 Stat. 680, 26 U.S.C.A. Int. Rev.Acts, page 703.

"Sec. 115. Distributions by Corporations

"(a) Definition of Dividend. The term 'dividend' * * * means any distribution made by a corporation to its shareholders, whether in money or other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) Source of Distributions. For the purposes of this Act every distribution is made out of earnings or profits to the ex-

tent thereof, and from the most recently accumulated earnings or profits * * *."

[2] C. 852, 45 Stat. 791, 26 U.S.C.A. Int. Rev.Acts, page 377.

"Sec. 112. Recognition of Gain or Loss.

* * * * * * *

"(b) Exchanges Solely in Kind—

* * * * * * *

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely

On June 1, 1928, Ferguson and Haas, Inc., a New York corporation (hereinafter called "New York"), had an earned surplus of $72,401.24. Its stock was owned equally by Edward Haas and Milford B. Ferguson. On June 19, 1928, New York transferred all its assets, subject to its liabilities, as of May 31, 1928, to Ferguson and Haas, Inc., a Delaware corporation organized May 26, 1928 (hereinafter called "Delaware"), in exchange for 50 shares of its stock, which were issued directly to Haas and Ferguson, 25 shares each. On the same day, as of May 31, 1928, Delaware acquired all the assets of the partnership of Ferguson and Haas and all patents and patent rights owned by Haas and Ferguson individually, in exchange for 50 shares of its stock, which were issued to Haas and Ferguson, 25 shares each. The total number of shares issued by Delaware was 100, and Haas and Ferguson each owned 50 shares.

Also on June 19, 1928, as of June 1, 1928, Package Machinery Company, a Massachusetts corporation (hereinafter called "Package") acquired all the assets of Delaware in exchange for 864 shares of its preferred stock and 1000 shares of its common stock, which were issued directly to Haas and Ferguson in equal amounts. The preferred shares came from treasury stock and the common shares were new issued. The net tangibles of

for stock or securities in such corporation or in another corporation a party to the reorganization.

"(4) Same—Gain of corporation. No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

"(5) Transfer to corporation controlled by transferor. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

\* \* \* \* \* \* \* \*

"(c) Gain from Exchanges not Solely in Kind.

"(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

\* \* \* \* \* \* \* \*

"(g) Distribution of Stock on Reorganization. If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

"(h) Same—Effect on Future Distributions. The distribution, in pursuance of a plan of reorganization, by or on behalf of a corporation a party to the reorganization, of its stock or securities or stock or securities in a corporation a party to the reorganization, shall not be considered a distribution of earnings or profits within the meaning of section 115(b) for the purpose of determining the taxability of subsequent distributions by the corporation.

"(i) Definition of Reorganization. As used in this section and sections 113 and 115—

"(1) The term 'reorganization' means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation."

Delaware were acquired in exchange for the treasury preferred stock, and the good will and patents were acquired in exchange for the common stock.

Delaware served as a conduit for the acquisition by Package of the assets and business of New York, the business of the partnership, and the patents and patent rights of Haas and Ferguson as individuals. Delaware had no assets except those which it acquired in exchange for its stock and which it immediately transferred to Package. It served no business purpose save in connection with that one transaction. Neither Delaware nor its stockholders, Haas and Ferguson, treated the transaction as a taxable exchange. They treated it as a statutory reorganization from which no profit was recognizable for tax purposes, and no one paid any income taxes as a result of that transaction.

On December 31, 1934, Package had an earned surplus accumulated since February 28, 1913, of $21,790.27, exclusive of Delaware's accumulated earnings of $72,-401.24, which it had taken over from New York. During 1935 Package paid out dividends of $90,639.00, of which the taxpayer received $16,312.81. In his income tax return for 1935 he included as taxable dividends only such amounts as had been paid from the earnings or profits of Package itself. The Commissioner included the full $16,191.51. If the earned surplus of Delaware is properly a part of the earned surplus of Package, the surplus of Package available for taxable dividends on December 31, 1934 was $94,191.51, and the Commissioner's determination would be correct.

The District Court was of the opinion that the earned surplus of Delaware became earned surplus in the hands of Package, which on distribution to the stockholders of the latter, was taxable income to them. The court noted that Package paid for the assets of Delaware with treasury preferred and newly issued common stock and held that that transaction was a merger of the two corporations within the meaning of § 112(i) (1) of the Revenue Act of 1928, and that, as such, no gain or loss was to be recognized for tax purposes.

Section 112(i) (1) defines the term "reorganization" as including: "(A) A merger or consolidation (including the acquisition by one corporation of * * * substantially all the properties of another corporation)," and § 112(b) (4) dealing with the recognition of gain or loss on such exchanges between corporations provides: "No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

In this case Package acquired all the assets of Delaware in exchange for stock, and it is conceded that there was a statutory reorganization in form. The taxpayer contends, however, that there was none in substance on the theory that Delaware was a sham corporation within the meaning of Gregory v. Helvering, 1934, 293 U.S. 465, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355. In that case the taxpayer owned all the shares of the A corporation, among whose assets were shares of the B corporation. They could be sold at a large profit, but if that was done directly A would have to pay a normal tax on the gain and the taxpayer to touch his profit would have to do so in the form of dividends on which there would be a surtax. For the sole purpose of avoiding all taxes, he organized corporation C, to which A transferred its B shares in consideration of the issuance of all C's shares to the taxpayer. Thereupon C was wound up; the taxpayer got the B shares as a liquidating dividend and sold them. The court found no reorganization within the intent of the statute and said that it was "simply an operation having no business or corporate purpose—a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character, and the sole object and accomplishment of which was the consummation of a preconceived plan, not to reorganize a business or any part of a business, but to transfer a parcel of corporate shares to the petitioner."

Cf. Electrical Securities Corporation v. Commissioner, 2 Cir., 1937, 92 F.2d 593. The taxpayer in this case argues that the purpose in setting up Delaware was to avoid the taxable gain or loss that would have to be recognized if the assets of the partnership and the patents owned by Haas and Ferguson individually were transferred directly to Package and that they erroneously treated the organization of Delaware as a non-taxable reorganiza-

tion under § 112(b) (5).[3] He concedes that the steps taken were within the statutory definition and that if Delaware had continued to own them that reorganization would be nontaxable, but he insists that since Delaware was merely a conduit into Package and not formed for any other business purpose, there is no tax-free reorganization here, since the sole purpose was to disguise as a reorganization a preconceived plan to evade taxes.

The principle of Gregory v. Helvering, supra, does not fit the facts of this case. Conceding, arguendo, that there was a scheme to avoid taxes it was concerned exclusively with the personal and partnership assets of Ferguson and Haas. It did not extend to the assets of New York, the earned surplus of which concerns us here. It is to be noted that the tangible assets acquired by Package were originally owned by New York and that if New York had transferred its assets directly to Package in exchange for stock distributed equally to Haas and Ferguson that transaction would have fallen clearly within the language of § 112(b) (4), (i) (1) (A). So far as New York's assets are concerned we are not concerned with an effort to do indirectly what could not be done directly, and it is clear that the intervention of Delaware between New York and Package does not transform into a reorganization within the statutory definition what would not have been such a reorganization without it. Cf. Commissioner v. Freund, 3 Cir., 1938, 98 F.2d 201.

Because the assets formerly owned by New York were paid for in treasury preferred stock, the taxpayer further contends that the exchange was not solely for "stock" as required by § 112(b) (4) on the ground that such stock has acquired the character of "other property" in the hands of Package. It is well settled that corporations dealing in their own stock are subject to taxation on the gains therefrom.

None of the cases relied on by the taxpayer[4] for the proposition that gain or loss on the sale of treasury stock must be taken into account for tax purposes imply that treasury stock is not "stock" within the meaning of § 112(c) which provides "(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) * * * if it were not for the fact that the property received in exchange consists not only of property permitted * * * (i. e., *stock* or *securities*, excepting the provisions of (b) (1), but also of *other property* or *money*, then the gain, * * * shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The statute does not recognize gain or loss on exchanges involving "stock or securities" and does recognize gain to the extent that the gain involves money or "other property". If Haas and Ferguson had received newly issued preferred stock they would have received "stock". The mere fact that Package paid them in stock from its treasury does not affect the character of what they received. The proprietary interest of Haas and Ferguson in Package was in no way affected as it would have been had they received cash or property other than stock. In Commissioner v. Air Reduction Co., 2 Cir., 130 F.2d 145, the taxpayer which already owned some shares in the A company acquired the balance of the A shares in exchange for treasury stock and cash. As the statute involved provided that the exchange must be for voting stock the court held that there was no tax-free reorganization solely on the ground that 19% of the A stock had been purchased with cash.

Section 112(h) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 379 provides that the distribution by a corporation of its stock "shall not be considered a distribution of earnings or

---

3 With respect to exchanges by individuals, as distinguished from corporations, § 112(b) (5) has the additional requirement of *control* of the transferee corporation by the transferors immediately after the exchange. Haas and Ferguson controlled Delaware but not Package.

The acquisition of New York's assets by Delaware was non-taxable under § 112(b) (4), (g).

4 Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed.

536; Commissioner v. Air Reduction Co., 2 Cir., 130 F.2d 145; Bass v. Commissioner, 1 Cir., 129 F.2d 300; Allen v. National Manufacturer & Stores Corp., 5 Cir., 125 F.2d 239, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753; Amelia H. Cohen Trust v. Commissioner, 3 Cir., 121 F.2d 689; Commissioner v. S. A. Woods Machine Co., 1 Cir., 57 F.2d 635, certiorari denied 287 U.S. 613, 53 S. Ct. 15, 77 L.Ed. 532.

profits within the meaning of section 115 (b) for the purpose of determining the taxability of subsequent distributions by the corporation."

Upon the stock received by Haas and Ferguson from Package no gain or loss was therefore to be recognized, and since Delaware's earned surplus was not distributed to Haas and Ferguson it was acquired by Package and was subject to taxation on subsequent distribution. Cf. Van Norman Co. v. Welch, 1 Cir., 141 F.2d 99, where this court held that a non-taxable stock dividend did not distribute earnings or profits of the distributing corporation. Where one corporation acquired the assets of another corporation in a tax-free reorganization it is well settled that the earned surplus of the transferor becomes earned surplus of the transferee and is subject to taxation as a dividend on subsequent distribution to the stockholders of the transferee.[5]

■■■ The taxpayer argues that the principle of Com'r v. Sansome, 2 Cir., 1932, 60 F.2d 931, should be limited to situations where control remains in the same hands at least to the extent of 50%. He relies on the fact that Package was permitted to use as the cost basis for the property acquired from Delaware its own costs and not those of Delaware, and cites the provisions of § 113(a) (6) and (7) of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, pages 697, 698, that the successor corporation may use the transferor's cost basis for assets acquired only if an interest of 50% remains in the same persons. The cost basis a corporation must use under the law will determine the amount of gain or loss on assets the corporation will have upon their subsequent sale or other disposition. To the extent there is gain or loss when that occurs profits are affected. We do not believe, however, that the particular cost basis used can affect the amount of earnings or profits acquired with the acquisition of the predecessor's assets. The fact that under approved accounting practice, a corporation treats acquired assets as capital and not earnings or profits is immaterial where, as here, the question is one of legislative intent to tax as a dividend a distribution of "apparent" capital when it reflects earnings or profits of a predecessor corporation. The purpose of the Sansome rule is to prevent tax evasion. It has received the approval of Congress. In S.Rep.No.2156, 74th Cong. 2d Session, p. 19, (1939—1 Cum.Bull. (Part 2) 678, 690), the Senate Committee on Finance said: "The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which * * * is * * * a distribution of stock or securities in connection with a reorganization * * *, on which gain is not recognized * * * is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange * * *". Citing Commissioner v. Sansome, supra; United States v. Kauffmann, supra, and Murchison's Estate v. Commissioner, supra.

And see S.Rep.No.1567, 75th Cong. 3d Sess., pp. 18–19 (1938-1 Cum.Bull. (Part 2) 779, 792); H.Rep.No.2894, 76th Cong., 3d Sess., pp. 41–42; S.Rep.No.2114, 76th Cong., 3d Sess. p. 25 (1940-2 Cum.Bull. 528, 545–548). It is conceded that property received by a corporation upon organization in exchange for stock is generally considered as capital. For tax purposes Congress might have provided that upon a reorganization accrued profits should be realized. It did not do that, and the parties to this transaction escaped taxation when Package took over Delaware. See Murchison's Estate v. Commissioner, supra, and Jones, J., dissenting in Campbell v. United States, 3 Cir., 1944, 144 F. 2d 177.

■■■ We do not consider the fact that Haas and Ferguson together received 28% of the preferred stock and less than 3% of the common stock of Package as mate-

---

[5] Commissioner v. Sansome, 2 Cir., 60 F.2d 931, certiorari denied 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575; United States v. Kauffmann, 9 Cir., 62 F.2d 1045; Murchison's Estate v. Commissioner, 5 Cir., 76 F.2d 641; Fain v. Commissioner, 5 Cir., 76 F.2d 1008, certiorari denied, 296 U.S. 588, 56 S.Ct. 100, 80 L.Ed. 416; Harter v. Helvering, 2 Cir., 79 F.2d 12; Baker v. Commissioner, 2 Cir., 80 F.2d 813; Corrigan v. Commissioner, 3 Cir., 103 F.2d 1010, certiorari denied 308 U. S. 576, 60 S.Ct. 91, 84 L.Ed. 482; Georday Enterprises v. Commissioner, 4 Cir., 126 F.2d 384; Reed Drug Co. v. Commissioner, 6 Cir., 130 F.2d 288.

rial. While they did not retain the same interest in the assets transferred which they had before, they received a compensatory interest in the assets of Package which they did not have before. Thereby their proportionate proprietary interest was maintained. Harter v. Helvering, supra; Cf. Reed Drug Co. v. Commissioner, 6 Cir., 1942, 130 F.2d 288; Baker v. Commissioner, 2 Cir., 1936, 80 F.2d 813. Under the Sansome rule, earnings or profits which pass to a successor company are taxable as dividends on subsequent distribution. It does not matter who received them.

The judgment of the District Court is affirmed.