## COMMISSIONER OF INTERNAL REVENUE *v.* MUNTER.

NO. 674.

Argued April 10, 1947.—Decided May 5, 1947.

*Lee A. Jackson* argued the cause for petitioner. With him on the brief were *Acting Solicitor General Washington, Sewall Key, Helen R. Carloss, Stanley M. Silverberg* and *I. Henry Kutz.*

*Samuel Kaufman* argued the cause for respondents. With him on the brief was *David Glick.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The Commissioner assessed deficiencies against respondents for failure to report as 1940 income dividends paid to them on stock of Crandall-McKenzie & Henderson, Inc., which respondents had bought earlier in that year.[1] These dividends are taxable as income to the respondents if the corporation paid them out of its earnings and profits. Int. Rev. Code §§ 22 (a), 115 (a), (b). Since its organization in 1928, the corporation had not accumulated earnings and profits sufficient to pay the 1940 dividend in full.[2] But the Commissioner found that the

---

[1] The Tax Court incorporated by reference a fact stipulation of the parties as its finding of fact. Each of the respondents had bought 10,000 shares of the 38,922 shares of the corporation then outstanding. The dividends declared in 1940 amounted to $35,166.25, of which each of the taxpayers received $12,500.

[2] At one point in the stipulation it was indicated that the new corporation had "no earnings or profits accumulated from December 4,

two old corporations which were merged in 1928 to form this new corporation had at that time, and turned over to the new corporation, accumulated earnings and profits sufficient to cover these dividends. One of these old corporations, L. Henderson & Sons, Inc., had about $75,000 in earnings and profits accumulated since 1913; the other, Crandall-McKenzie Company, had about $330,000. Liability of respondents for these deficiencies depends upon whether the new corporation acquired and retained a sufficient amount of these earnings and profits of its predecessors to cover the 1940 dividends.

The 1928 merger took place under the following circumstances. Stockholders of Henderson and certain stockholders of Crandall-McKenzie agreed together with a firm of underwriters to effect a merger of the two corporations into a new one. The underwriters agreed to buy for cash 52% of the stock of the new corporation for public sale. In execution of this agreement the new corporation was formed and acquired all the assets of Henderson and Crandall-McKenzie. The six stockholders of Henderson accepted stock in the new corporation as full payment for surrendering their old company stock. Holders of nearly one-half of the stock of old Crandall-McKenzie did not accept new corporation stock but were paid some $355,000 in cash for their old stock.[3] The other old Crandall-McKenzie stockholders

---

1928 to December 31, 1939," and no earnings or profits in the taxable year 1940. But elsewhere in the stipulation it appears there may have been some $32,000 earnings and profits accumulated between 1928 and 1940. The Tax Court apparently did not resolve these contradictory statements.

[3] Some of the Crandall-McKenzie stockholders were paid $356.00 plus per share; others were paid $315.53 per share for identical stock.

A part of the old Crandall-McKenzie stock for which cash was paid was bought for $300,000 cash by one old Crandall-McKenzie stockholder from another while the reorganization was being transacted. The stockholder who made this purchase thereupon surrendered his

were satisfied to accept only new corporation stock. When the reorganization was complete the new corporation stock had been distributed as follows: 14,607 shares to old Crandall-McKenzie stockholders, 9,524 shares to old Henderson stockholders, and 25,869 shares to the general public through the participating underwriters.

The Tax Court found that there was a failure of proof that the earnings and profits of the old corporations had been distributed in 1928. Relying upon the rule of *Commissioner* v. *Sansome,* 60 F. 2d 931, which, for tax purposes, treats a reorganized corporation as but a continuation of its predecessors, the Tax Court determined that the new corporation acquired all the earnings and profits of its predecessors in 1928. Then, without analyzing the earnings and distribution history of the new corporation after its inception in 1928 and prior to the 1940 distribution, the Tax Court concluded that the new corporation's accumulated earnings and profits were sufficient in 1940 to make the questioned dividends taxable to respondents as income. 5 T. C. 108. The Circuit Court of Appeals for the Third Circuit reversed, 157 F. 2d 132, following its earlier decision in *Campbell* v. *United States,* 144 F. 2d 177, which had narrowly limited the *Sansome* rule. The theory of the *Campbell* decision, so far as relevant to the only question directly presented here, was that change in ownership brought about by the participation of new investors in the reorganization made the new corporation such an entirely different entity that it could not properly be called, even for tax purposes, a continuation of its

original Crandall-McKenzie holdings, together with his recently purchased shares, to the new corporation in exchange for shares in the new corporation and $300,000 cash. We do not decide whether the sale from one old stockholder to another represents a transaction separate from the reorganization. Whatever may be the ultimate significance of this point, it does not affect the result we reach here.

predecessors.[4] Thus, it was concluded, earnings and profits of the predecessors were not acquired by the new corporation.

We granted certiorari because of an alleged conflict with the *Sansome* rule. 329 U. S. 709. In the state of the record presented we find it necessary to decide no more than whether the distinction of the *Sansome* rule made by the *Campbell* case is correct.

A basic principle of the income tax laws has long been that corporate earnings and profits should be taxed when they are distributed to the stockholders who own the distributing corporation. See Int. Rev. Code §§ 22, 115 (a), (b). The controlling revenue acts in question, however, exempt from taxation distributions of stock and money distributions, at least in part, made pursuant to a reorganization such as transpired here in 1928. See Revenue Act of 1928, § 112 (b), (c), (i) (1) (A); § 115 (c), (h), 45 Stat. 791, 816–818, 822–823. Thus unless those earnings and profits accumulated by the predecessor corporations and undistributed in this reorganization are deemed to have been acquired by the successor corporation and taxable upon distribution by it, they would escape the taxation which Congress intended. See § 112 (h), Revenue Act of 1928; *Murchison's Estate* v. *Commissioner,* 76 F. 2d 641; *United States* v. *Kauffmann,* 62 F. 2d 1045.

In *Commissioner* v. *Sansome, supra,* it was held that implicit in the tax exemption of reorganization distributions was the understanding that the earnings and profits

---

[4] There were two independent grounds for the decision in the *Campbell* case. One ground was that the earnings and profits of the predecessor corporation there had actually been distributed in the course of the reorganization. The Circuit Court of Appeals stated expressly that it did not rest its decision in the instant case on this theory.

so exempt were acquired by the new corporation and were taxable as income to stockholders when subsequently distributed. Congress has repeatedly expressed its approval of the so-called *Sansome* rule as a correct interpretation of the purpose of the tax laws governing reorganizations.[5] And Congress has apparently been satisfied with Treasury Regulations which follow the *Sansome* doctrine.[6]

Of course, when, as in the *Sansome* case, all the stockholders of the old corporation swap all their old stock for identical proportions of the new, there can be no doubt that the earnings and profits of the old have not been distributed and are passed on to the successor corporation. But if the predecessors' earnings and profits are not distributed in the course of the reorganization, they do not disappear simply because the successor corporation has some assets and owners in addition to those of the old corporation or corporations. See *Putnam* v. *United States*, 149 F. 2d 721, 726. The congressional purpose to tax all stockholders who receive distributions of corporate earnings and profits cannot be frustrated by any reorganization which leaves earnings and profits undistributed in whole or in part. Insofar

---

[5] The Senate Committee recommending adoption of § 115 (h) of the Revenue Act of 1936 cited the *Sansome* case with approval. It described the new section as not changing "existing law." The Committee recommended the amendment only "in the interest of greater clarity." S. Rep. No. 2156, 74th Cong., 2d Sess. (1936) 19. See also § 115 (h) Revenue Act 1938, 52 Stat. 447; H. R. Rep. 2894, 76th Cong., 3d Sess. (1940) 41; S. Rep. 2114, 76th Cong., 3d Sess. (1940) 25.

[6] U. S. Treas. Reg. 94, Art. 115–11 (1936); U. S. Treas. Reg. 103, § 19.115–11 (1940). See *Taft* v. *Commissioner*, 304 U. S. 351, 357; *Helvering* v. *Winmill*, 305 U. S. 79, 83; *Douglas* v. *Commissioner*, 322 U. S. 275, 281–282; *Boehm* v. *Commissioner*, 326 U. S. 287, 291–292.

as accumulated earnings and profits have been distributed contemporaneously with the reorganization so as to become taxable to the distributees, they, of course, cannot be said to have been acquired by the successor corporation. But insofar as payments to the predecessor corporations or their stockholders do not actually represent taxable distributions of earnings and profits, those earnings and profits must be deemed to have become available for taxable distribution by the successor corporation.

It would be inappropriate for us to make the factual analysis of this record necessary to trace the earnings and profits involved in the 1928 reorganization in the absence of such a determination by the Tax Court and review by the Circuit Court of Appeals. See *Helvering* v. *Rankin,* 295 U. S. 123, 131–132; *Helvering* v. *Safe Deposit & Trust Co.,* 316 U. S. 56, 66–67; *Commissioner* v. *Scottish American Investment Co.,* 323 U. S. 119, 124. It might be that upon a full factual analysis the Tax Court would conclude that the new corporation acquired and had retained earnings and profits of Henderson sufficient to cover the 1940 distribution. Or the Tax Court may find it necessary to make further analysis of the 1928 distributions to Crandall-McKenzie's old stockholders. In this connection it is urged that the cash paid for part of the Crandall-McKenzie stock in 1928 constituted a taxable distribution of some or all of the accumulated earnings and profits. The Tax Court, however, has previously declined to consider these cash payments as such a distribution of earnings and profits in the absence of proof that the recipients had been taxed for them. But even if it were proved that old Crandall-McKenzie stockholders had been so taxed, the face amount of that tax would not necessarily reflect the earnings and profits distribution they received. For example, part or all of their tax may have represented capital gain as

distinguished from earnings and profits.[7]   Or the distribution may be found to have constituted a liquidation under § 115 of the Revenue Act of 1928.[8]   It may be necessary on remand, therefore, for the Tax Court to consider, in the light of §§ 112 (c) and 115 of the Revenue Act of 1928, how much, if any, of the 1928 cash distribution to Crandall-McKenzie stockholders represented earnings and profits deductible from the earnings and profits transferred to the new corporation available for the 1940 dividend payments.

The decision of the Circuit Court of Appeals is reversed with directions that the cause be remanded to the Tax Court for proceedings not inconsistent with this opinion.

*So ordered.*

---

[7] Section 112 (c) (1) of the Revenue Act of 1928 provides in effect if a cash or property distribution is made in the course of a reorganization "then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."   But § 112 (c) (2) makes taxable as dividend income that portion of the gain which represents the distributee's share of the distributing corporation's earnings and profits.

[8] Section 115 (c) of the Revenue Act of 1928 governs the taxability of distributions in liquidation.