## CROSSETT WESTERN CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8987.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 11, 1945.
Decided April 26, 1946.

434

Carl E. Davidson, of Portland, Ore., for petitioner.

Helen Goodner, of Washington, D. C., (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen. on the brief), for respondent.

Before ALBERT LEE STEPHENS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

■■ From the facts stipulated before the Tax Court, it appears that the petitioner is a Delaware corporation organized in 1923. In a nontaxable reorganization it acquired the net assets of three corporations in exchange for its own stock. Those assets were taken over under the internal revenue laws without recognition of gain or loss. The bases of such assets to the petitioner were the same as to the three corporations. Under Commissioner v. Sansome, 2 Cir., 60 F.2d 931, certiorari denied 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575, the earnings and profits of the original corporations, amounting to $923,180.51, became the earnings and profits of the petitioner at the time of the reorganization.[1] From January 1, 1924, when the petitioner started business, to and including December 31, 1939, its losses exceeded $923,180.51. As of the beginning of the taxable years involved (1940 and 1941) the petitioner had no accumulated earnings either from its own efforts or transferred to it by a predecessor company under the Sansome rule. In computing its equity invested capital for the 1940 and 1941 excess profit tax the petitioner made no deduction for the amount of earnings and profits it had acquired from the old companies. The Tax Court held that there should have been such deduction under Section 718(b) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 718(b) (3).[2]

---

[1] This is in accordance with the stipulation between the parties, but even aside from that the present facts are squarely under the Sansome doctrine. There was no change in proprietary interest between the new and old companies; nor was there any taxable dividend distribution to the shareholders of the old corporations out of the $923,180.51 earnings and profits. Those particular earnings of $923,180.51 remained after the old corporations had distributed some of their earnings to their stockholders. Our decision in Campbell v. United States, 3 Cir., 144 F.2d 177 has no bearing here. In that matter new capital and new stockholders came in with consequent change of corporate control and the accumulated earnings had been actually distributed to the old stockholders.

[2] Internal Revenue Code, 26 U.S.C.A.: "Sec. 718 [as added by Sec. 201, Second Revenue Act of 1940, c. 757, 54 Stat. 974]. Equity invested capital.

"(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the fol-

Petitioner asserts that section 718(b) (3) was enacted to eliminate duplications in the computation of invested capital. The duplication ordinarily existing arises because the accumulated earnings and profits of the antecedent corporations are included in the property of the latter taken over by the successor and become part of its own invested capital. In addition, under Sansome, the accumulated earnings and profits of the original companies are considered part of the accumulated earnings and profits of the functioning company. Therefore unless the latter accumulated earnings and profits of the prior corporations were deducted they would be in reality counted twice. Petitioner maintains that in this case there is no such duplication because the earnings and profits received under Sansome have been lost. As calculated, petitioner's equity invested capital reflects only its paid-in capital and does not include any amount of accumulated earnings and profits of the func-

tioning company. It is argued that the provisions of section 718 contemplated that a corporation which is the result of a consolidation has an invested capital of its own without regard to the invested capital of its predecessors and therefore that its paid-in capital is not reduced by subsequent losses.

The legislative history of section 718(b) (3) is stressed as supporting the view that there was no intention of requiring a deficit corporation to reduce its equity invested capital by the earnings and profits acquired from its predecessors and that the section was included in the Code in order to eliminate duplications in the computation of invested capital. The Second Revenue Bill of 1940, H.R.10413, contained the forerunner of 718(b) (3) which was 718(c) (4) and read:

"(c) Rules for application of subsections (a) and (b) For the purposes of subsections (a) and (b) * * *

---

lowing amounts, reduced as provided in subsection (b)—

"(1) Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

"(2) [as amended by Sec. 218, Revenue Act of 1942, c. 619, 56 Stat. 798]. Property paid in. Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (l) for determining earnings and profits;

"(3) Distributions in stock. Distributions in stock—

"(A) Made prior to such taxable year to the extent to which they are considered distributions of earnings and profits; and

"(B) Previously made during such taxable year to the extent to which they are considered distributions of earnings and

profits other than earnings and profits of such taxable year;

"(4) Earnings and profits at beginning of year. The accumulated earnings and profits as of the beginning of such taxable year;

* * * * * * * *

"(b) Reduction in equity invested capital. The amount by which the equity invested capital for any day shall be reduced as provided in subsection (a) shall be the sum of the following amounts—

"(1) Distributions in previous years. Distributions made prior to such taxable year which were not out of accumulated earnings and profits;

"(2) Distributions during the year. Distributions previously made during such taxable year which are not out of the earnings and profits of such taxable year;

"(3) Earnings and profits of another corporation. The earnings and profits of another corporation which previously at any time were included in accumulated earnings and profits by reason of a transaction described in section 112(b) to (e), both inclusive, or in the corresponding provision of a prior revenue law, or by reason of the transfer by such other corporation to the taxpayer of property the basis of which in the hands of the taxpayer is or was determined with reference to its basis in the hands of such other corporation, or would have been so determined if the property had been other than money; and

"(4) Reduction on account of loss on tax-free liquidation."

* * * * * * * *

"(4) Earnings and Profits of Transferor Corporations—For the purposes of subsection (a) (4) the accumulated earnings and profits of the corporation shall be determined without the inclusion of any of the earnings and profits of a transferor corporation which would otherwise be included by reason of property of such transferor having been paid in for shares of, or as a contribution to the capital of, or as paid-in surplus of, the transferee corporation."

In explanation of this the House Ways and Means Committee stated: "Under various provisions of the Internal Revenue Code dealing with exchanges and liquidations, the transfer of the property by a corporation to another corporation results in the non-recognition, in whole or in part, of the gain or loss realized by the transferor upon such transfer. In such cases well established principles of income tax law require that the earnings and profits of the transferor shall go over to the transferee and shall be considered to be earnings and profits of the transferee for tax purposes. Subsection (c) (4) of Section 718 provides that such transferred earnings and profits shall not be taken into account in computing the earnings and profits as of the beginning of the taxable year for the purpose of determining the equity invested capital. Inasmuch as the property received by the transferee upon such a transfer is included in such cases in the equity invested capital at its adjusted basis in the hands of the transferor, it is necessary to exclude the earnings and profits acquired by the transferee by reason of such transfer in order to avoid duplication." H. Report 2894 Cum. Bull. 1940-2 p. 514.

Section 718(c) (4) was then deleted by the Senate Committee and replaced with section 718(b) (3). The Senate Finance Committee commenting on this change said (Senate Report No. 2114, Cumulative Bulletin 1940-2), pages 528, 532: "Your committee has made no change in the determination of equity invested capital except to clarify the provisions which were designed to avoid any overstatement of invested capital as the result of duplicating amounts in the° items of earnings and profits and property paid in. Such a duplica-

tion might otherwise arise in the computation of invested capital in cases of reorganization and other tax-free exchanges."

Further in the same report the Committee stated on page 539:

"Section 718. Invested Capital. This section is substantially as it was in the House bill except for certain clerical and technical changes. The most important of these are as follows:

"(1) Section 718(c) (4) of the House bill provided that, in making the computations required by subsections (a) and (b), the earnings and profits of a transferee corporation were not to include the earnings and profits of another corporation which would otherwise be included by reason of property of such other corporation having been paid in for stock, or as a contribution to capital, or as paid-in surplus, of the transferee corporation. This subsection has been inserted as Section 718(b) (3) and made an actual step in the computation."

The Conference Committee accepting the Senate changes said regarding them (H. Conference Rep. No. 3002, 76th Cong., 3rd Sess. (1940-2 Cum. Bull. 548) at page 49): "The conference agreement also makes further technical changes in order to eliminate duplications in the computation of equity invested capital. Provisions have been inserted governing the extent to which the equity invested capital of a parent corporation is to be increased or decreased following a liquidation under section 112 (b) (6). This provision enables the provisions of section 718(b) (3) to be expanded so as to cover all situations in which, under the doctrine of Commissioner v. Sansome, 2 Cir. 60 F.2d 931, the earnings and profits of one corporation become the earnings and profits of another."

As seen, unquestionably Congress in considering this branch of the excess profits tax problem had in mind possible duplication of equity invested capital. If the House proposal of 718(c) (4) calling for a reduction of accumulated earnings and profits alone and not providing for a reduction of equity invested capital had been adopted, the present question might well not have arisen. But 718(c) (4) was deliberately

eliminated and in its place 718(b) (3) was substituted with the Conference Committee reporting as to the latter that it was "expanded so as to cover all situations in which, under the doctrine of Commissioner v. Sansome, 2 Cir., 60 F.2d 931, the earnings and profits of one corporation become the earnings and profits of another." It is fair to assume that if Congress had intended the section which it finally adopted not to apply to such facts as here presented it would have so stated. That is just what it did with section 718(a) (4) which is specifically limited to corporations having accumulated earnings and profits. The House Committee, though it was dealing with the proposed section 718(c) (4) at the time, nevertheless understood that the legislation would affect a deficit corporation. See House Report No. 2894, supra, p. 25. Treasury Regulation 109, Section 30.718-6 T.R. 109, while not controlling, is helpful in ascertaining the section's intent and calls for the reduction to be made regardless of the condition of the earnings and profits account immediately prior to or at any time subsequent to the transaction.

It is true, as the Supreme Court said in Harrison v. Northern Trust Co., 317 U.S. 476 at page 479, 63 S.Ct. 361 at page 363, 87 L.Ed. 407, that there is " * * * no rule of law forbidding resort to explanatory legislative history no matter how 'clear the words may appear on "superficial examination." ' " Here, however, the expressed purpose is beyond doubt unless the words "previously at any time" are distorted from their common meaning. Those words were consciously chosen over the patently restricted 718(c) (4) section after committee and conference deliberations. As eventually written into the revenue law, they simply do not confine the required reduction of equity invested capital to cases where there are or may be duplications.[3] Section 718(b) (3) is in general terms and makes no exception for a deficit corporation. The mandate of the statute is that the equity invested capital "shall" be reduced by the earnings and profits of the petitioner. We think the ultimate intent of Congress is obvious and it is our duty to construe the section to give effect to that intent. United States v. American Trucking Ass'n., 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345. And see Commissioner of Internal Revenue v. Estate of Bedford, 325 U.S. 283, 65 S.Ct. 1157, 89 L.Ed 1611. We agree with the Tax Court that the clear language of the statute specifically governs the situation before us.

The application of section 718(b) (3) may possibly produce a harsh result in this particular matter, but, as Mr. Justice Douglas said in Deputy v. du Pont, 308 U.S. 488 at page 498, 60 S.Ct. 363 at page 368, 84 L.Ed. 416: "In sum we cannot sacrifice the 'plain, obvious and rational meaning' of the statute even for 'the exigency of a hard case.'" And see Lynch v. Alworth-Stephens Co., 267 U.S. 364 at page 370, 45 S.Ct. 274, 69 L.Ed. 660. Relief from an excessive and discriminatory tax by an invested capital corporation where, as claimed by the petitioner, "the invested capital of the taxpayer is abnormally low" is provided by the Revenue Code itself, Section 722(c), 26 U.S.C.A. Int.Rev.Code, § 722(c).

Petitioner makes the further point that properly interpreted, 718(b) (3) requires reduction of equity invested capital by the amount of predecessor earnings and profits only if and to the extent that those earnings are included in accumulated earnings and profits at the beginning of the taxable year. This involves an attempted reconstruction of the section which is not only "awkward", as admitted, but entirely disregards the usual and accepted sense of the phrase "previously at any time." It is also suggested that section 718(b) (3) calls for a deduction only if and when petitioner included its predecessor earnings and profits in the total of accumulated earnings and profits at the beginning of the taxable year. Whatever merit there might be in this argu-

---

[3] It is forcibly urged by the respondent that from the standpoint of accurate accounting, duplication of equity invested capital exists even in a deficit corporation. As stated in the concurring opinion of Judge Murdock in the Tax Court " * * * the loss of earnings works a double reduction of what makes up equity invested capital. Not only do the earnings disappear, but the asset account is correspondingly reduced."

ment it is contrary to the stipulated facts and irrelevant in this case where the earnings and the profits of the two antecedent companies, under the Sansome rule, become the petitioner's earnings and profits.

Affirmed.