COMMISSIONER OF INTERNAL REVE-
NUE v. PHIPPS.

No. 3542.

Circuit Court of Appeals, Tenth Circuit.

March 10, 1948.

HUXMAN, Circuit Judge, dissenting.

Harry Marselli, of Washington, D. C., (Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss, Lee A. Jackson, and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

W. Clayton Carpenter, of Denver, Colo., (Montgomery Dorsey, Wm. L. Branch and Hughes & Dorsey, all of Denver Colo., on the brief), for respondent.

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This proceeding is here on petition to review a decision of the Tax Court. Margaret R. Phipps, hereinafter referred to as the taxpayer, owned certain shares of preferred stock issued by Nevada-California Electric Corporation. On or about December 1, 1936, Nevada-California Electric Corporation, hereinafter referred to as the parent company, liquidated five wholly owned subsidiary corporations and took over their assets in complete cancellation and redemption of all of their outstanding capital stock. No gain or loss was recognized for income tax purposes on the liquidation. At the time of the liquidation, one of the subsidiaries had earnings or profits accumulated prior to March 1, 1913, in the total amount of $937,465.97, and earnings or profits accumulated after February 28, 1913, in the sum of $90,362.77. The other four subsidiaries were without accumulated earnings or profits and had deficits in the total amount of $3,147,803.62. As of December 31, 1936, the parent company had

earnings or profits accumulated prior to March 1, 1913, in the amount of $18,060.94, and it had earnings or profits accumulated since February 28, 1913, in the amount of $2,129,957.81, all exclusive of the earnings or profits of the one subsidiary and of the deficits of the four. The earnings or profits of the parent company for the year 1937 amounted to $390,387.02, and the cash distributions to owners of preferred stock during the year totaled $802,284.00. Of the cash distributed, $390,387.02 was paid out of current earnings or profits, and the remaining $411,896.98 was not paid out of such earnings or profits. The taxpayer received distributions during the year 1937 in the amount of $18,480.00, of which $8,-992.28 was paid out of current earnings or profits, and the remaining $9,487.72 was not paid out of such earnings or profits. She seasonably reported the entire amount for income tax purposes but later filed a claim for refund on the ground that the entire amount received and reported did not constitute taxable dividends. The Commissioner of Internal Revenue denied the claim. The Tax Court held that of the amount distributed to the taxpayer, only $8,992.28 constituted taxable dividends. The Commissioner sought review.

■ The question presented is whether in determining the amount of earnings or profits of the parent company available for distribution to stockholders after the liquidation of the subsidiaries, the surplus of one subsidiary should be included but the deficits of the other four excluded, or whether the earnings of the one and the deficits of the four should all be taken into account. Section 22(a) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Acts, page 825, includes dividends in the definition of gross income. Section 115(a), 26 U.S.C.A. Int.Rev. Acts, page 868, defines a dividend for purposes of the income tax title as a distribution in money or in other property made by a corporation to its shareholders (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year, without regard to the amount of the earnings and profits at the time the distribution was made. And section 115(b) provides that for purposes of the Act every

distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. It is well settled that where one corporation acquires all of the assets of another corporation in a tax-free reorganization, the accumulated earnings or profits of the predecessor corporation are carried forward intact into the acquiring corporation as earnings or profits and are available for distribution as dividends to its stockholders, even though the acquiring corporation may have treated them as capital on its books. Commissioner v. Wheeler, 324 U.S. 542, 65 S.Ct. 799, 89 L.Ed. 1166; Commissioner v. Munter, 331 U.S. 210, 67 S.Ct. 1175; Commissioner v. Sansome, 2 Cir., 60 F.2d 931, certiorari denied, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575; United States v. Kauffmann, 9 Cir., 62 F.2d 1045; Murchison's Estate v. Commissioner, 5 Cir., 76 F.2d 641; Harter v. Helvering, 2 Cir., 79 F.2d 12; Baker v. Commissioner, 2 Cir., 80 F.2d 813; Corrigan v. Commissioner, 3 Cir., 103 F.2d 1010, certiorari denied, 308 U.S. 576, 60 S. Ct. 91, 84 L.Ed. 482; Georday Enterprises v. Commissioner, 4 Cir., 126 F.2d 384; Reed Drug Co. v. Commissioner, 6 Cir., 130 F. 2d 288; Putnam v. United States, 1 Cir., 149 F.2d 721; Crossett Western Co. v. Commissioner, 3 Cir., 155 F.2d 433, certiorari denied, 329 U.S. 729, 67 S.Ct. 84.

■■ But the Commissioner urges that the rule is limited to the treatment of accumulated earnings or profits of the company liquidated or absorbed, and that it does not include carrying forward the deficit in earnings or profits of the company liquidated or absorbed into the corresponding account of the emerged company in determining whether distributions subsequently made by the emerged company to its stockholders are made from earnings or profits or from capital. In a tax-free reorganization of corporations where a parent liquidates a wholly owned subsidiary, taking over its assets subject to their liabilities in complete cancellation and redemption of its issued and outstanding capital stock, or where two corporations merge, the entire corporate life survives as a continued venture insofar as tax consequences are concerned. A transaction of that kind does not produce any change in respect of tax

purposes, the successor being merely the continuation of the predecessor. The principle is not a narrow one, limited to accumulated earnings or profits of the liquidated or absorbed company. It includes a deficit in the earnings or profits account of such company. The earnings and profits accounts of the transferor company, whether consisting of credit balances or deficits, should be reflected in the corresponding accounts of the transferee company and should be taken into account in determining whether distributions subsequently made to stockholders of the emerged company were paid out of earnings or profits or out of capital. Harter v. Helvering, supra. The case of Cranson v. United States, 9 Cir., 146 F.2d 871, certiorari denied, 326 U.S. 717, 66 S.Ct. 22, 90 L.Ed. 424, on which the Commissioner places strong reliance is not to the contrary. There the taxpayer contended that the earnings or profits of the parent company were reduced by operating deficits taken over in the liquidation of wholly owned subsidiaries, and that in consequence the distribution made to him as a stockholder in the parent company was out of capital, not earnings. But the court did not pass upon that question. Instead, it was held that in the absence of an affirmative showing that the deficits of the subsidiaries were incurred during the year in which the parent made the distribution to the taxpayer, the question was not before the court for consideration.

Conceding that prior to 1936, where a corporation had a deficit in its earned surplus account caused by operating losses, the deficit must have been restored by applying earnings subsequently received against the deficit before any of the subsequent earnings could be considered as accumulated earnings available for distribution as taxable dividend, the Commissioner urges that the rule was modified by section 115(a) of the Revenue Act of 1936, supra; and that under the provisions of that section, current earnings are available first for payment of dividends, and only the current earnings which are not distributed may be used to restore a deficit in the earned surplus account. But the only change effected by the statute was to make dividends paid out of earnings or profits of the tax-

able year subject to tax in the hands of the distributee without regard to the amount of accumulated earnings or profits for earlier years, and that change has no material bearing here.

The decision of the Tax Court is affirmed.

Judge HUXMAN, Circuit Judge (dissenting).

I cannot escape the conclusion that the decision of the Tax Court is wrong and should be reversed. The factual situation is set out in detail in the majority opinion and will be referred to only so far as is necessary for the purpose of this opinion. The Nevada-California Electric Corporation will be referred to as the Parent. Prior to December 1, 1936, it owned five wholly owned subsidiary corporations. One of these subsidiaries had accumulated earnings after February 28, 1913, of $90,362.77. The other four had accumulated deficits of $3,-147,803.62.

These five subsidiaries were liquidated on or before December 1, 1936, in a tax-free proceeding by a surrender of all of the assets to the Parent. No gain or loss was or could be recognized as a result by virtue of Section 112(b) (6) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 856, and the Parent accordingly reported no gain or loss as a result thereof.

At the time these subsidiaries were taken over, the Parent had no deficit in its capital structure, but on the other hand had accumulated earnings and profits of $2,129,957.-81 since February 28, 1913. The question for decision is whether, when these subsidiaries came over, their net deficit in their capital structure became the deficit of the Parent to be liquidated to the extent of the accumulated earnings and profits on the books, of the Parent prior to 1937, so that when such earnings of the Parent were paid out to its stockholders they would constitute a return of capital rather than a distribution of earnings.

Both parties agree that the decision is controlled by the so-called "Sansome Rule" laid down by the Second Circuit in Commissioner v. Sansome, 60 F.2d 931. The parties to this litigation, as well as the

court, are, however, unable to agree upon the interpretation of this case.

Ordinarily, when all the stock in a company is surrendered in return for all its assets, the assets are treated as capital without distinction between accumulated earnings and ordinary corporate assets. Income tax law, however, does not treat them thus. For income tax purposes, the accumulated earnings which come over retain such status by their recipients, and when the recipient is a corporation and subsequently distributes such assets, they constitute a distribution of earnings and profits taxable as a dividend to the stockholders of such corporation. This is the Sansome Rule and is all that the court decided in that case, as I interpret it. In order to reach this result, the court held that the life of the corporation taken over does not end as to its earnings and profits, but continues in the successor corporation, so that such accumulated earnings remain available for dividends in the hands of the successor corporation.

But it does not follow that this oneness of identity continues for all purposes. The reason for the rule is to prevent, in a tax-free transfer of all of the assets of a subsidiary, a distribution of accumulated earnings, available for dividends subject to income tax in the subsidiary's hands, from becoming capital in the hands of the Parent and thus escaping taxation as income when distributed by the Parent.

When the reason for this rule ceases, it no longer has application and the separateness of corporate entity even between a Parent and its subsidiaries applies. To hold that the separateness of identity between a subsidiary and its Parent is to be disregarded for all purposes, in a reorganization in which the Parent surrenders all the stock in return for all of the assets, so that a deficit of the subsidiary could be set up on the books of the Parent as its deficit to be wiped out by the accumulated earnings of the Parent other than earnings of the current taxable year, would allow the Parent to distribute its accumulated earnings so set off against the deficits of the subsidiaries as a return of capital—the net result would be to allow the Parent to recognize loss in the tax-free transaction and would nullify Section 112(b) (6) of the 1936 Revenue Act. Such a theory would allow the Parent, by carrying the subsidiaries' deficits into its own books, to wipe out such deficits with its own accumulated earnings and profits and thereafter to distribute such earnings and profits as a return of capital free from the income tax, when otherwise a distribution of such earnings and profits would be a dividend subject to the income tax.

The Sansome case recognizes that this does not follow. In the Sansome case, the affiliate had accumulated earnings which would be taxable if distributed by it. These earnings passed to the Parent and were subsequently distributed by the Parent to its stockholders. When the Government attempted to tax this distribution in the hands of the stockholders, it was asserted that these earnings constituted capital; but as pointed out, the Second Circuit held that for the purpose of these earnings, the separateness of the two corporations would be disregarded and the earnings would continue as such in the hands of the receiving company. The court did not, however, hold or imply that the remaining capital assets of the affiliate became the capital assets of the Parent, or that the deficit, if any, in the capital structure of the affiliate came over and became a deficit in the capital structure of the Parent which could thereafter be liquidated out of accumulated earnings of the Parent.

Thus the court, speaking of the taxpayer, said, 60 F.2d 932: "He could not successfully assert that such dividends must be computed as part of his gain on the transaction, but must be content with a corresponding allowance when he sold. * * * The taxpayer gets his quid pro quo in the closing transaction. Though it is a chance whether the final resultant will be favorable or not, the dice are not loaded against him."

Speaking of Section 112(b) (6), the court said: "That section provides for cases of corporate 'reorganization' which shall not result in any 'gain or loss' to the shareholder participating in them, and it defines them with some particularity. He must wait until he has disposed of the new shares, and use his original cost as the 'base'

to subtract from what he gets upon the sale."

To permit the Parent to write off the deficit in the capital structure of its affiliates as shown by their books, after the reorganization by distributing its earned surplus income to its stockholders as a distribution of capital, permits it to recognize a loss of capital in the taking over of the subsidiary at the time of reorganization without the disposal of all of the assets taken over, without the establishment of its cost base, and in direct contravention of the applicable statutory provisions. The Sansome case is no authority for this. In fact, as I construe it, it interdicts such a result.

The majority relies in part for its position that the deficit in the capital structure of the affiliates, after they are taken over by the Parent, may be liquidated by a distribution of the Parent's earned surplus as capital, upon the case of Harter v. Commissioner, also decided by the Second Circuit, 79 F.2d 12, 13. But to me, that case is not in point. In the Harter case, all the subsidiaries which came over to the Parent in the reorganization had large surpluses and no deficit in their capital structure. The Parent company did have a small deficit in its capital structure. In that case, two companies, each with earned surplus, merged to form a company referred to as the New Company. The New Company later became a subsidiary of the Boxboard Company. At that time, the New Company had a large surplus both from the operation of the Sansome Rule on the earned surpluses of its predecessors and from its own activities. The stockholders of the New Company received for their stock in such company both preferred and common stock from the Parent Boxboard Company. Boxboard did not, however, take over the assets of the New Company at that time. They were sold to a third corporation for cash and stock of such third corporation. Later Boxboard bought up and retired all its preferred stock which it had given in exchange for the stock of the New Company. In order to pay for this stock, it borrowed $3,322,987.50 from its subsidiary, the New Company. Thereafter

it took over all of the assets of the New Company and cancelled its note, given for the loan, held by the New Company against its notes payable account. The only question in the Harter case was whether the accumulated surplus of the New Company came over to the Boxboard Company under the Sansome Rule at the time of the loan transaction or at the time Boxboard took over all of the assets and whether the distribution thereof was of capital or of earned surplus. Thus, the court said: "The question is how to allocate the payment to the Boxboard preferred stockholders made out of the proceeds of the loan by the New Company."

The court then held that the loan transaction was not a true loan but that in reality Boxboard was distributing the accumulated earnings and profits of the New Company to retire its, Boxboard's, preferred stock. It inferred from the facts that Boxboard actually took over the New Company at the time of the so-called loan, so that the Sansome Rule operated at that time to bring over the accumulated earnings as such to Boxboard and were used by Boxboard to retire its preferred stock. This, it was held, more than exhausted such surplus, and since Boxboard itself had no surplus, the later distribution had to be from capital.

Nowhere in the reasoning of the court is a deficit in the capital structure of the Parent company alluded to, nor is any statement made as to what effect that would have upon the distribution to the stockholders by the Parent of earned surplus coming to it from the subsidiary in the reorganization proceedings. It was not necessary to refer to it because it was not a point in issue in that case.

Conceding, without so holding, that a parent may liquidate its own deficit by the distribution of taxable surplus coming over to it from an affiliate or a subsidiary by distributing such surplus to its stockholders as capital, it is quite a different thing to say that it may set up the bookkeeping deficit in the affiliate or subsidiary which comes over as its own deficit without a sale of all of the assets and a determination of the exact amount of its gain or loss, and then liquidate such bookkeeping deficit now set

122

up on its books as its own by distributing its own surplus to its stockholders as a distribution of capital.

In Commissioner v. Munter, 331 U.S. 210, 67 S.Ct. 1175, 1177, the Supreme Court placed its stamp of approval on the Sansome Rule as announced in the Sansome case. It may be of some interest to note that the Harter case was not even mentioned in the opinion. Apparently neither of the parties to that litigation attached any importance to it. Had the Harter case been urged as a modification of the Sansome Rule or had the court been of the opinion that it had a bearing on the rule, it might have well discussed it in its opinion.

It appears to me that the following language by the Supreme Court is the meat in the cocoanut. The court says: "The congressional purpose to tax all stockholders who receive distributions of corporate earnings and profits cannot be frustrated by any reorganization which leaves earnings and profits undistributed in whole or in part. Insofar as accumulated earnings and profits have been distributed contemporaneously with the reorganization so as to become taxable to the distributees, they, of course, cannot be said to have been acquired by the successor corporation. But insofar as payments to the predecessor corporations or their stockholders do not actually represent taxable distributions of earnings and profits, those earnings and profits must be deemed to have become available for taxable distribution by the successor corporation."

To permit a Parent company with large earned income surpluses on its books, which would be taxable if distributed by it to its stockholders, to take over affiliates with large bookkeeping deficits in a tax-free reorganization proceeding and then set up these deficits on its books as its own deficit and thereafter distribute its taxable earnings as capital to the extent of such bookkeeping deficit, in my opinion not only violates the express provisions of Section 112(b) (6), but violates the spirit of the Sansome Rule and the above quoted pronouncement by the Supreme Court.

For these reasons, I am forced to respectfully dissent.