STRATTON GRAIN COMPANY, a corporation, Plaintiff-Appellee,

v.

George REISIMER, and Joseph J. O'Day, Executor of Will of Frank J. Kuhl, deceased, Defendants-Appellants.

STRATTON GRAIN COMPANY, a corporation, Plaintiff-Appellant,

v.

George REISIMER, Joseph J. O'Day, Executor of Will of Frank J. Kuhl, deceased; and United States of America, Defendants-Appellees.

Nos. 12629, 12630.

United States Court of Appeals
Seventh Circuit.

Dec. 17, 1959.

Elwin J. Zarwell, Bernard V. Brady, John T. Harrington, Milwaukee, Wis., for plaintiff-appellee, Wood, Brady, Tyrrell & Bruce, Milwaukee, Wis., of counsel.

Charles K. Rice, Asst. Atty. Gen., David O. Walter, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Edward G. Minor, U. S. Atty., Francis L. McElligott, Asst. U. S. Atty., Milwaukee, Wis., for George Reisimer.

Before SCHNACKENBERG, PARKINSON,[1] and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff brought suit to recover excess profits tax and interest in the sum of $144,986.25, plus statutory interest, which plaintiff had paid for the fiscal years ending May 31, 1942, through May 31, 1946.

All facts, including jurisdiction, were stipulated. These are set out in the opinion of the distinguished District Judge in Stratton Grain Co. v. Reisimer, 1958, 165 F.Supp. 915.[2] Plaintiff here was the surviving corporation of a statutory merger, in a non-taxable reorganization, whereby it received the assets of all three parties to the merger. Plaintiff took and recorded all these assets as capi-

[1.] While Judge Parkinson participated in the hearing of oral arguments and a conference of the division judges abovenamed, he was not present at the time of, and did not participate in, the adoption of this opinion. He concurred in the result reached in this opinion.

[2.] Defendant George Reisimer was the Acting Collector of Internal Revenue at

tal and treated them as capital. Subsequently plaintiff sustained operating losses which left it in a capital deficit position.

The pertinent statute reads:

"§ 718. Equity invested capital

"(a) *Definition.* The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b) * * *

"(2) *Property paid in.* Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange * * *

"(4) *Earnings and profits at beginning of year.* The accumulated earnings and profits as of the beginning of such taxable year; * * *

"(b) *Reduction in equity invested capital.* The amount by which the equity invested capital for any day shall be reduced as provided in subsection (a) shall be the sum of the following amounts— * * *

"(3) *Earnings and profits of another corporation.* The earnings and profits of another corporation which previously at any time were included in accumulated earnings and profits by reason of a transaction described in section 112(b) to (e) both inclusive,[3] or in the corresponding provision of a prior revenue law, or by reason of the transfer by such other corporation to the taxpayer of property the basis of which in the hands of the taxpayer is or was determined with reference to its basis in the hands of such other corporation, or would have been so determined if the property had been other than money; * * *"

Defendants contend that where a corporation taxpayer has received the earnings and profits of transferor corporations, in a tax-free reorganization, even where (as here) it has recorded them on its books as paid-in surplus, these undistributed earnings and profits must be included in determining its accumulated profits under Section 718(a)(4) of the Code, supra, for computation of its equity invested capital in the determination of its excess profits tax credit.

Plaintiff never treated any part of these undistributed earnings and profits as its own earnings and profits, but solely as its capital surplus.

There are two alternative credits to be used in computing excess profits tax. One is based on "normal profits;" the other, used by plaintiff here, is based on the investment made to obtain the profit. This investment would include retained earnings. The greater the sum which can be established as equity invested capital, the greater will be the normal ordinary earnings not subject to the tax.

In computing its "equity invested capital" under Section 718(a), for a year stipulated to be typical, plaintiff showed, as property paid in, the aggregate total of its capital, capital surplus, and earned surplus at the time of the reorganization and merger. Accumulated earnings and profits were listed as zero because plaintiff had been losing money since the merger. Plaintiff made no deduction from the equity invested capital under

Milwaukee, Wisconsin, May 27, 1949. Frank J. Kuhl was the Collector of Internal Revenue at Milwaukee, Wisconsin, September 16 and December 15, 1947. He died testate March 15, 1954. Joseph J. O'Day is the Executor of his Will.

3. In 1935, plaintiff was incorporated in a non-taxable reorganization under Section 112(b)(4) Internal Revenue Act of 1934. It then took over assets valued at $1,882,000.85, for which it issued 10,000 shares of common capital stock with a stated value of $1 million. The undistributed accumulated earnings and profits of the merged corporations (exclusive of plaintiff) totalled $874,323.09 at the date of reorganization.

Section 718(b)(3) because the accumulated earnings and profits of the predecessor corporations had never at any previous time been included in plaintiff's accumulated earnings and profits. Plaintiff showed equity invested capital to be $1,889,381.49.

The Commissioner of Internal Revenue took the position that the computation should have been:

1. Property paid in (including predecessors' earnings) ............$1,889,381.49
2. Accumulated earnings and profits ($874,323.09 less operating deficit of $503,343.75) ...........  370,979.34
3. Total ........................$2,260,360.83
4. Less earnings and profits deducted under Section 718(b)(3) ......  874,323.09
5. Equity invested capital ........$1,386,037.74

or nearly half a million dollars less than plaintiff shows. The Commissioner assessed deficiencies and disallowed claims for their refund. This action followed.

District Judge Tehan entered judgment for plaintiff, which has been appealed to this Court. As recovery of refund results in increase of plaintiff's income tax liability for the years in suit, the District Court judgment provided for such increased liability, and provided further that in satisfying the judgment for plaintiff, the amounts of the judgment in favor of the United States might be used as an offset. Plaintiff has filed a notice of appeal from that portion of the judgment, for protective purposes only.

Under Treasury Regulation 112, Section 35.718–2(a) operating deficits, such as plaintiff's, need not be taken into account but may be considered as zero when determining invested capital for excess profits tax. Plaintiff followed that course.

In the Commissioner's computation, the operating deficit becomes a substantial factor and plaintiff is deprived of the privilege of not having its deficit taken into account. The rationale, as the learned District Judge observed, is that an investment once made remains the producing factor of income, and the taxpayer is entitled to seek recoupment in future years.

As District Judge Tehan has included a summary of the legislative history in his opinion, supra, it is unnecessary to repeat it here.

The Commissioner relied on Commissioner v. Sansome, 2 Cir., 1932, 60 F.2d 931, and Crossett Western Co. v. Commissioner, 3 Cir., 1946, 155 F.2d 433, certiorari denied 329 U.S. 729, 67 S.Ct. 84, 91 L.Ed. 631, and cases following them, to the effect that earnings and profits of original corporations become the earnings and profits of the surviving corporation.

Plaintiff contends that the Sansome rule has been substantially limited in scope by Commissioner v. Phipps, 1949, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771. In Sansome the old company at reorganization had a large surplus and undivided profits. The new company made no profit and dissolved in 1923. Sansome received payment on his shares in liquidation. Some surplus and some undivided profits remained. The Commissioner included the payment as dividends for 1923. Sansome wished to take all liquidating dividends to amortize his cost and return any overplus as profit in 1924 when the last payment was made. The Court of Ap-

peals held that the accumulated earnings of the original company retained their character for tax purposes in the hands of the successor company and payments to Sansome were taxable as ordinary income. The Court of Appeals' opinion spoke of the continuity of corporate venture. Various subsequent opinions in many courts, in following Sansome, referred to this theory of continuing venture.

The Phipps case involved a corporation which liquidated five of its wholly owned subsidiaries by distributing to itself all of their assets, subject to their liabilities, by retaining and cancelling all of their outstanding stock. One of the five had accumulated earnings and profits. The others had deficits.

Phipps, a preferred stockholder, received a pro rata cash distribution, which the Commissioner characterized as a dividend and as ordinary income. The Tax Court held that part of the cash distribution was not a taxable dividend on the theory that the accumulated earnings and profits of the corporation, plus those of the subsidiary which had a surplus, were erased by the aggregate deficits of the other four. The Tax Court applied the continuation of venture theory, as did the majority of the Tenth Circuit, Commissioner v. Phipps, 1948, 167 F.2d 117 to which the case was appealed. On writ of certiorari, the United States Supreme Court, as Judge Tehan records (165 F. Supp. 925):

"* * * recognized that the decisions of the federal courts had frequently taken the 'continued venture' theory as the basis of the Sansome rule * * * but, on the contrary that the principle on which the Sansome case rested was that of preventing tax-free distribution of profits taken over in a tax-free transfer * * *; and that this was solely for the purpose of preventing corporate earnings from escaping taxation by means of Section 112(b) to (e), which section was intended only to defer not to permit the escape from taxation of the distribution of such earnings."

We agree with the District Judge that the Sansome rule has been limited to one purpose: to prevent a tax-free distribution of a predecessor's earnings and profits. It does not provide for acceleration of recognition of gains, specifically deferred by Congress under Section 112 (b) to (e). When the earnings and profits of the predecessor corporation are distributed, then they will be subject to taxation.

Plaintiff has never treated the earnings and profits of the predecessor as its own earnings and profits. The excess profits computation is not related to distribution of earnings.

We find no basis for the computation made by the Commissioner, nor for the resulting deficiency assessment.

Affirmed.